# EXHIBIT ONE

# An Angelic Choice, Inc.

1135 Pasadena Avenue S., Suite #327F
South Pasadena Florida 33707
866-396-6861 / 727-388-3311
Fax: 727-388-9673
www.aangelicchoice.org

## ADOPTION AGREEMENT

This Adoption Agreement ("Agreement") dated for reference the ___16th___ day of ___August___, 20_07_, BETWEEN:

A. Angel's Adoption, Inc. ("Agency"), having its principal place of business and records office at 1135 Pasadena Avenue S., Suite #327F, South Pasadena, Florida 33707;

AND

___Robert Kelly Craig + Suzanne Craig___, individuals, residing at ___16866 E. Peakview Ave Aurora, Colorado 80016___ (hereinafter referred to as "Applicant").

**WHEREAS**

The Agency provides adoption services to persons who wish to adopt in various international locations.

Applicant wishes to adopt a child internationally and bring the adopted child back to the United States as a permanent resident, and seeks the aid of the Agency in completing the adoption and post-adoption services. The Agency has agreed to provide the information and assistance necessary to aid Applicant in adopting a child internationally, and immigrating the child to the United States for permanent residence.

**NOW WITNESSETH** that in consideration of the mutual covenants the parties hereto agree as follows:

### A. NATURE OF SERVICES

In consideration of the payments described in the adoption fee Schedule attached hereto as Addendum 1, and incorporated herein, the Agency agrees to:

1. provide informational packets about the adoption program;
2. provide assistance in gathering information and preparing documents for Applicant's dossier;
3. review and check the documents submitted by Applicant, and advise of changes, if needed;
4. assemble documents into a dossier for presentation to adoption officials in the designated country;

- 1 -

Initial: _RKC_

5. transfer the dossier to the designated country;
6. translate the dossier and add the translation to the dossier, if needed;
7. present the completed dossier to the adoption officials;
8. receive and send referral from adoption officials to Applicant;
9. act as liaison between adoption officials and Applicant;
10. consult by telephone throughout the process;
11. help coordinate travel and accommodations from United States by our travel agent;
12. help arrange travel to the designated country and help provide a coordinator/escort throughout the trip within the country, and/or arrange for child to be escorted to the United States as more specifically set forth in the Fee Schedule attached hereto; and,
13. such other services as the Agency determines are appropriate and necessary.

## B. ASSUMPTION OF RISK
Applicant understands and agrees that:

14. the amount of time before a child is placed in Applicant's home is dependent on many circumstances beyond the control of the Agency;
15. in many instances the identity and location of the biological parents will be unknown and true information on the medical, genetic and health history of the child and his/her parents will not be available or may be inaccurate;
16. the information received by the Agency has been primarily provided by the orphanage in the designated country, who are often not experts in the fields of psychiatry, health or genetics. Even when medical records can be accessed, there may be differences in translations and terminology, or other reasons that may render a diagnosis inaccurate;
17. no person, agency or doctor can predict with total accuracy whether a child will develop a disability or medical condition as the child grows and matures. Applicant understands that the child may not show evidence of a condition even though the condition may exist. Applicant releases the Agency from all liability, so long as the Agency did not knowingly withhold relevant material information relating to the child's condition from Applicant;
18. because of the incubation period for AIDS and Hepatitis B, children can test false-negative for these diseases, but actually develop the disease later on. Applicant understands the risk exists, is willing to assume the risk, and releases the Agency from all liability should the child develop these diseases, so long as the Agency does not knowingly withhold such relevant material information from Applicant;
19. the adoption of an older child holds the risk of an attachment or bonding disorder, and that, while in most cases the children are able to bond, the Agency cannot guarantee a given child's ability to attach to a new parent; and,
20. in the event hospitalization and/or treatments above and beyond general medical checkups are required for the child during the course of the adoption process, Applicant will cover these medical expenses and will receive a thorough explanation of and receipts for treatments provided.

## C. NO WARRANTIES OR GUARANTEES

The Agency works in full faith that every adoption will be completed, but does not and cannot guarantee that Applicant will be successful adopting a child or that Applicant will be successful in returning to the United States with that child.

The Agency does not warrant or guarantee, and shall not be responsible, for any of the following:

21. the health and safety or well being of the child before or after the adoption;
22. the information about the health and safety or well being of the child provided by adoption officials or orphanage staff;
23. changes or amendments to the regulations, statutes and policies of the country of adoption and/or the United States prior to the completion of the adoption;

- 2 -                                                          Initial:

24. that the fees, expenses and disbursements charged by the United States and country of adoption government will not be changed prior to the completion of adoption; or,
25. any medical, disability and travel insurance for Applicant or the adopted child.

## D. APPLICANT'S RISKS, RESPONSIBILITIES, AND INFORMED CONSENT

Applicant covenants and agrees to comply with all statutes, regulations and policies of the United States and the country of adoption and applicable states in the United States and regions and providences in the country of adoption and any other jurisdiction which Applicant and child may pass from the time of their departure from the United States to the return of Applicant and child to the United States.

Applicant agrees NOT to act in a manner that could be construed as discourteous, immoral or insulting towards the United States or adoption country authorities or the Agency staff or which may injure the interests or subsequent facilities of the Agency or any of its employees or consultants. Any such action will be cause for termination of Agreement pursuant to the terms of Section E.

Applicant is aware of the risk in international adoption and agrees to be honest, patient and flexible throughout the adoption process with the Agency and other authorities. Applicant further agrees to make a full and complete disclosure to the Agency of all matters relating to the adoption (marital relationship, health status, etc.) and inform the Agency immediately of any changes during the process.

Applicant is aware of the risk of delays that may occur through international adoption and is aware of the fact that extra costs may be involved if delays occur. Applicant is aware that the Agency is not responsible for extra costs incurred by the families if delays occur and that the Agency does not reimburse families for extra costs incurred, nor does it pay for any travel costs of the families.

Applicant agrees not to pursue another adoption or plan a pregnancy after applying to the Agency for adoption and before the adoption is completed. If an unplanned pregnancy should occur, Applicant will inform the Agency and the Agency will determine whether or not to continue the adoption process.

Applicant further understands that after a child is placed with Applicant, the Agency is not obligated for any replacement if the adoption disrupts at any time, but is willing to make suggestions for a prospective new adoptive family and assist in reporting all changes to the proper officials in the country of origin.

The Agency maintains a policy of non-discrimination. Applicant understands that final approval is made by adoption officials in the designated country and the Agency is not responsible if adoption officials ultimately reject Applicant. Applicant further understands the Agency will not refund fees for the services already provided if Applicant is rejected by officials in the adopting country.

- 3 -

Initial:

Applicant understands and agrees all contacts with adoption officials and the orphanage will be made by/or through the Agency. This may be excepted if the Agency gives permission to Applicant in writing.

Applicant shall abide by the advice and process described in the Agency's Adoption Guide and other written materials, as well as the possible changes made by the adoptive country officials or the United States government.

The Agency and Applicant agree that all information provided with respect to the adoption process shall be held in the strictest confidence by both parties, and no information or document shall be released to a third party without the consent of the other. Third parties shall include newspapers, internet and other public media, as well as any other person or organization not authorized to have access to Applicant's information. Applicant understands that the staff of the Agency is mandated by state child abuse laws to report indicated cases of child abuse or neglect to state child welfare authorities.

Applicant agrees to meet all post placement requirements, including a legal re-adoption if necessary, and to fulfill all requirements of the Agency and the country of adoption. All costs relating to the post placement reports are the responsibility of Applicant.

### E. TERMINATION

Applicant may terminate this Agreement at any time, but shall compensate the Agency for all services provided to Applicant to that date. Applicant further understands that the Agency may not be able to recover the adoption dossier after it has been presented to the officials in the designated country of adoption.

The Agency may terminate this Agreement if Applicant's social worker/home study agency cannot recommend the family for a favorable home study. The Agency may also terminate this Agreement at any time if Applicant is found to be: (a) acting in bad faith and/or being non-compliant with the direction and instruction of personnel of the Agency; () presenting him/herself over a period time in an inappropriate manner that indicates placement of a child with Applicant would not be in the best interest of the child. In the unlikely event of termination, Applicant is responsible for payment to the Agency for all services provided to Applicant to that date.

### F. FEES

The Agency's fees relative to each program are set forth in the Fee Schedule attached hereto and incorporated herein. The Agency charges only for services rendered. All fees are non-refundable, all fees are transferable.

### G. GENERAL COVENANTS

This Agreement including these terms and conditions and the Addendums hereto contains the entire agreement of the parties hereto with respect to the subject matter

- 4 -

Initial: RKC

14. We understand that completion of this Application does not guarantee placement of a child with us.

SIGNATURES:   Husband: _Robert K Craig_   Date: _8/16/07_

Wife: _Suzanne CC_   Date: _8·16·07_

(Please feel free to attach additional sheets to this Application to elaborate on any answer, or to provide additional information below which you think would be helpful.)

*$200 Application fee is due at time of application. You may mail application with check to An Angelic Choice, Inc. or for expedited service you may fax application and make Paypal payment to info@aangelsadoption.org.*

*Referrals may be held upon approval of application.*
*If your application is approved by An Angelic Choice, Inc., official match of referral may be made upon receipt of Adoption Agreement and fees.*

*Agency reserves the right to decline any application by prospective client without explanation.*

- 6 -

Initial: _RKC_
_SC_