**UNITED STATES FEDERAL DISTRICT COURT
IN THE MIDDLE DISTRICT COURT OF FLORIDA**

| | | |
|---|---|---|
| **SUZANNE & ROBERT CRAIG,** | ) | Hon.: James S. Moody, Jr. |
| **SEAN & LORI BOYNTON,** | ) | |
| **SUMMER ELIZANDO,** | ) | **Case No.: 8:10-cv-00671** |
| **KEVIN & NICHOLE LUCAS** | ) | |
| Individuals, | ) | **PLAINTIFFS' FIRST AMENDED** |
| **Plaintiffs,** | ) | **COMPLAINT FOR VIOLATIONS** |
| | ) | **OF:    18 U.S.C. §§  1341, 1343,** |
| v. | ) | **18 U.S.C. § 1962(c)** |
| | ) | **18 U.S.C. § 1962(d)** |
| **LITTLE PEARLS ADOPTION** | ) | **BREACH OF CONTRACT,** |
| **AGENCY, INC.** | ) | **FRAUDULENT & INNOCENT** |
| a Florida For-Profit Corporation | ) | **MISREPRESENTATION,** |
| **DEBBIE FISCHER,** | ) | |
| **and RICHARD FEINBERG** | ) | |
| Individuals | ) | |
| **Jointly and Severally,** | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | **PLAINTIFFS DEMAND A JURY** |

_____

Sean Boynton
Bush Ross, P.A.
Attorney for Plaintiffs
1801 North Highland Avenue
Tampa, Florida 33602
(813) 204-6494
sboynton@bushross.com

Joni M. Fixel
Fixel Law Offices
Attorney for Plaintiff
4084 Okemos Road, Suite B
Okemos, MI 48864
(517) 332-3390
jfixel@fixellawoffices.com

Jonathan B. Sbar (P131016)
Robert L. Rocke (P710342)
Rocke, Mclean & Sbar, PA
Attorneys for Defendant Feinburg
2309 S. MacDille Ave.
Tampa, FL 33602
(813) 769-5600 - phone
(813) 769-5601 - fax
jsbar@rmslegal.com

The Plaintiffs, Suzanne and Robert Craig, Summer Elizando, Sean and Lori Boynton, and Kevin and Nichole Lucas (collectively "Plaintiffs"), by and through their attorneys, Fixel Law Offices, PLLC, appearing *pro hac vice* before this Court, allege the following in their Complaint against Little Pearls Adoption Agency, Inc., Debbie Fischer and Richard Feinberg (collectively Defendants):

## STATEMENT OF THE CASE

This is a case of a fraudulent enterprise operating under the guise of a legitimate adoption agency. Plaintiffs, and each of them, were hopeful adoptive families. Defendants Feinburg and, later, Fischer held the Little Pearls Adoptions out as an agency that could conduct adoptions in Vietnam and the provinces of Nam Dimh and Vinh Ha in that country. Time and again, Defendant Fischer claimed, both implicitly and explicitly, that Little Pearls was licensed to conduct Vietnamese adoptions. As it turned out, Little Pearls was not licensed to conduct adoptions in Vietnam, Nam Dinh or Vinh Ha at times when she represented to the Plaintiffs that they were. Plaintiffs lost tens of thousands of dollars when the dossiers that Little Pearls was hired to prepare proved invalid because Defendants were not licensed. Defendant Feinburg, as a Director of Little Pearls knew, or should have known, that Fischer was falsely representing that the agency was licensed. He ratified and approved of Fischer's behavior. And, when it came to light that the agency had been ripping adoptive parents off through Fischer's lies, he worked with Fischer to mute the effects of the fraud and justify keeping the families' money. In addition to falsely representing that the agency was licensed, Defendants Fischer and Feinburg also made false representations as to the uses of fees they were collecting. Fischer represented to adoptive families that they were paying "country fees" which were to be paid to Vietnamese adoption agencies and officials through

2

Little Pearls' Vietnam office.  It was later discovered that no money at all was paid to the Vietnamese office and Fischer and Feinburg had simply pocketed the cash.  Finally, in April of 2008 the Vietnamese government outlawed foreign adoptions because of corruption and abuses of foreign Adoption Service Providers, similar to Little Pearls.  Even though the regulatory environment had turned hostile, and it should have been very apparent to Fischer and Feinburg that they could no longer conduct Vietnamese adoptions because they were now ILLEGAL, they continued to solicit and accept money from hopeful adoptive families for adoptions which they knew were impossible in light of the change in the laws.  This resulted in tens of thousands of dollars in losses to the Plaintiffs and equivalent ill begotten gains to the defendants.  Plaintiffs now seek redress for their devastating losses resulting from the operations of the Little Pearls adoption agency.

## JURISDICTION AND VENUE

**1.**   This action is brought under the Federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961 et seq., and various other Florida statutes and common law doctrines.   The matter in controversy exceeds the sum or value of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.   Jurisdiction is vested in this Court by virtue of 28 U.S.C. §§ 1331.

**2.**   Because claims brought under Florida law are also so related to Plaintiffs' federal claims, over which the Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution, the Court also has

jurisdiction over Plaintiffs' Florida common law and statutory claims pursuant to 28 U.S.C. § 1367.

**3.** A substantial part of the events and omissions giving rise to the claims stated herein occurred in this District and all defendants are subject to the personal jurisdiction of this judicial district. Venue is proper in this District and Division pursuant to 28 U.S.C. §§ 1391 and to 18 U.S.C. §1965(b).

## **PARTIES**

**4.** Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal assertions contained in the previous numbered paragraphs.

**5.** At all times material hereto, the Plaintiffs, Suzanne and Robert Craig, were and are individuals residing in Colorado.

**6.** At all times material hereto, the Plaintiff, Summer Elizando, was and is an individual residing in Michigan and later the State of Florida.

**7.** At all times material hereto, the Plaintiffs, Sean and Lori Boynton, were and are individuals residing in the State of Florida.

**8.** At all times material hereto, the Plaintiffs, Kevin and Nichole Lucas, were and are individuals residing in Arkansas.

**9.** Defendant, Little Pearls Adoption Agency, Inc. formerly known as "An Angelic Choice" was a business organized in the State of Florida, offering international adoptions of orphans of children from Vietnam and, specifically, the Nam Dimh and, to a lesser extent, the Vinh Ha provinces of that country.

**10.** At all times material hereto, the Defendant, Little Pearls Adoption Agency, Inc.

4

(doing business as, and hereinafter referred to as "LP") was a corporation for profit organized under the laws of the State of Florida, with its principal place of business located in Tampa and later South Pasadena, Florida.

**11.**   At all times material hereto Defendant Richard Feinberg ("Defendant Feinburg") was a Director of the Defendant LP, and acted in his capacity as a Director of LP.  At all times material hereto, Defendant Feinberg was and is an individual residing in Florida.

**12.**   At all times material hereto Defendant Debbie Fischer ("Defendant Fischer") was a Director of the Defendant LP, duly appointed as the President by the LP Board of Directors and acted in her capacity as an officer of LP.  At all times material hereto Defendant Fischer was an individual residing in Florida.

**13.**   Defendants Fischer and Feinberg acted in their individual capacities in all acts alleged herein and also directed, conducted, controlled or participated in the day-to-day operations of LP as directors and employees. All acts of LP were, in fact, the acts of the Defendants in their capacities as directors and agents of Defendant LP.

### COMMON ALLEGATIONS

**14.**   Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal assertions contained in the previous numbered paragraphs.

*Vietnamese International Adoptions, 2002 - 2008*

**15.**   In 2002 the Vietnamese Government passed Decree 68/2002.  This decree marked a substantial change in the health and human services code of the country and allowed foreign couples to adopt Vietnamese children.

**16.**   On June 21, 2005 the United States and Vietnam signed a Memorandum of

Understanding (MOU) that would allow parents in the United States and other countries to adopt children from Vietnam.  The agreement was set to expire on September 1, 2008 with an option to mutually renew.

17.   Many Adoption Service Providers ("ASP's") from other countries began operating in Vietnam under the provisions of the MOU and continued to do so until the MOU expired in 2008.[1]

18.   Little Pearls was one of many such ASP's.

19.   In November of 2007 the Embassy of the United States in Hanoi, Vietnam, produced an "Adoptions Statement."   This document alleged corruption in the Vietnamese foreign adoption system.   Vietnamese officials, said the report, were accepting bribes from some ASP's to fabricate documentation for international adoptions.[2]  The phrase "baby selling" was used several times to describe what was happening.

20.   The November 2007 document served as a warning to adoptive parents and ASP's that the system was being undermined by corruption and to "proceed with caution" in performing adoptions.  Fischer and Feinburg knew, or reasonably should have known, that there was a reasonable likelihood that adoptions they contracted to perform after this date would not be completed due to this corruption coming to light and changes in the system.

21.   Further, as persons operating a Vietnamese ASP, Fischer and Feinburg knew or reasonably should have known of the problems in the Vietnamese adoption system long before the Embassy issued the November warning.  They were, after all, involved in the

---

[1] **Ex. A,** *Embassy of the United  States Hanoi, Vietnam,* Adoptions Statement November 2007 at  p. 1 *available at* http://vietnam.usembassy.gov/adoptionstatement1107.html.
[2] *Id.*

process personally.

**22.**   On April 25 2008, the US Embassy issued a "Summary of Irregularities in Adoptions in Vietnam.[3]"   The document provided detailed findings as to the corruption which was occurring in the execution of international adoptions in Vietnam.   Specifically, the report alleged improper bribery of government officials by several of the ASP's, and also alleged that the ASP's often required their clients to make "cash donations" to orphanages in order to secure placement of the children they were adopting.[4]

**23.**   In response to the US Embassy's report, the Vietnamese government announced on April 25, 2008 that the MOU of 2005 would not be renewed after it was scheduled to lapse on September 1, 2008.   The Vietnamese government also announced at this time that it would suspend acceptance of new dossiers for adoption of children on July 1, 2008.   And, Vietnam announced that dossiers that had not received a referral would be closed on September 1, 2008.[5]

**24.**   In the months to follow, the Vietnamese government arrested several of its health and human services officials for corruption in the adoptive province.   In Nam Dinh, six officials were jailed for terms of 2 – 4 years for their involvement in the illegal and immoral activity.[6]

*Defendant Little Pearls*

**25.**   For the convenience of the Court and of the parties, Plaintiffs are providing a

---

[3] **Ex. A,** *Embassy of the United  States Hanoi, Vietnam,* Summary of Irregularities in Adoptions in Vietnam (4/25/2008), *available at* http://vietnam.usembassy.gov/adoptionstatement1107.html.
[4] *Id.* at *5.
[5] **Ex. A,** *US Embassy, "April 2008  - Warning Concerning Adoptions in Vietnam,"* April, 2008 *available at* http:// vietnam.usembassy.gov/adoption_warning0408.html?loc=interstitialskip.
[6] **Ex. A.**

general "road map" of the Little Pearls adoption scam prior to discussing the detailed allegations pertaining to each Plaintiff individually.  Plaintiffs therefore will outline and summarize their claims prior to discussing the details so as to make the Complaint more readable and accessible.  This will require Plaintiff to make some generalized statements which will be subsequently bolstered by specific, particularized allegations.  Plaintiffs will vigorously defend any assertion that Fed.R.Civ.Pr. 9(b)'s particularity requirement is not satisfied because of the summary statements provided to follow.

26.   Since approximately September 2004, Defendant LP was an adoption agency in Florida.

27.   Defendant Feinburg started the agency, but sold it to Defendant Fischer in approximately 2005.

28.   Defendant Feinburg discovered that, according to Vietnamese law, a license to conduct foreign adoptions could not be sold outright.  For this reason, he continued to serve as a Director of the organization.

29.   Defendant Feinburg would later claim to complaining adoptive families that he "had nothing to do with it."

30.   In light of his continued involvement through to the end, this statement was false.

31.   Defendant Feinburg continued to take an active role in Little Pearls.  When the licensing issues and scandal with the families erupted, as shall be detailed herein, he was the first one who Fischer met with to resolve the situation.

32.   At all times relevant to this complaint, Little Pearls advertised its services via a website which showed pictures of "adoptable children" and provided basic information about the adoptive process, www.littlepearls.com.

8

**33.** Little Pearls claimed, on this website, to specialize in adoption from Vietnam and Vietnam's Nam Dinh and Vinh Ha provinces.

**34.** The website claimed, in a posting available at times relevant to this complaint, that Little Pearls was licensed to perform adoptions in Vietnam and Nam Dinh and Vinh Ha provinces. In fact, they were not.

**35.** As the following detailed allegations will demonstrate, in late 2007 Defendant Fischer, acting on behalf of LP, entered into contracts with each of the Plaintiffs to conduct adoptions in Vietnam's Nam Dinh province.[7] These contracts promised to perform adoptive services for which a valid Vietnamese license was required.

**36.** As shall be demonstrated, Defendant Fischer, acting on behalf of LP, represented to each of the Plaintiffs via email communications that Little Pearls was licensed to perform adoptions in Vietnam and Vietnam's Nam Dinh province.

**37.** As shall be demonstrated herein, these representations were false. Defendant LP was never properly licensed in Nam Dinh. And, Defendant LP's license to conduct adoptions in Vietnam was invalid during the period of time in which Fischer was soliciting additional adoptive clients to LP, approximately late 2007 through early 2008.

**38.** As shall be more explicitly laid out herein, each of the Plaintiffs paid money to Little Pearls to conduct the adoptions, based on representations that the agency was licensed to perform adoptions. When it was discovered that the agency was not licensed, all of the work that the agency had claimed to have done became worthless.

**39.** Little Pearls' agents have refused or failed to honor every demand for refund. Defendant Fischer initially offered the families a lien on her home. However, she later

---

[7] Compl. Ex.'s One, Two, Three, and Four.

retracted this offer, claiming "financial difficulties."

**40.**   The individual allegations will demonstrate that Little Pearls represented that it was charging moneys to each Plaintiff for "country fees" which were to be paid to its Vietnamese office for various charges on the Vietnamese side of the operation.

**41.**   Plaintiffs paid approximately $6,000 - $12,000 apiece for these "country fees," based on representations of Little Pearls' staff that they were being collected for agency fees.

**42.**   It was later determined that no money was paid to the Vietnamese office for these fees.  The Little Pearls agency, at the direction of Defendants Fischer and Feinburg, had simply pocketed the cash.

**43.**   The remaining allegations shall detail how each of the Plaintiffs was injured when they had to pay these fees out of pocket to complete their adoptions, after already having paid the fees to Little Pearls.

**44.**   Finally, as the following detailed allegations demonstrate, Little Pearls staff and agents continued to solicit for and contract to enter into adoption services long after the November 2007 warning from the US Embassy in Hanoi that the Vietnamese adoptive process was being investigated for corruption.

**45.**   As the following detailed allegations shall demonstrate, Little Pearls, by and through its various agents and employees, continued to represent to hopeful adoptive families that adoptions were possible when, in fact, the changing regulatory environment meant they were anything but.

**46.**   Plaintiffs, and each of them, paid money to Little Pearls based on the false representations that the adoptions were possible when, in fact, they were not.

**47.** The Plaintiffs, and each of them, were injured when, after having paid exorbitant fees to the Little Pearls agency to perform Vietnamese adoptions, they were prevented from adopting because such adoptions became illegal after a change in the law.

**48.** As the individualized allegations will show, Defendant Fischer's role in the scam was to contact hopeful adoptive families, make false representations, and get them to pay adoptive fees for an adoptive process which was not nearly as possible as she lead them to believe.

**49.** As the following individual allegations and supporting documents will show, Defendant Feinburg's involvement in the fraud was more behind the scenes.  Feinburg's name is not on any of the direct communications with the Plaintiffs, but he was the first person Fischer ran to when the news broke that she had been lying about the agency's licensing status.  Discovery will reveal exactly what Feinburg knew about Fischer's illegal operations, how much of her behavior he approved and directed behind the scenes.  However, the fact that he was a Director of LP at all time relevant leads to a strong inference that he ratified and approved of Fischer's activities.

*Little Pearls was Not Validly Licensed – Fischer Knew, and Lied, Feinburg Approved*

**50.** An item of contention in this suit is the licensing status of Defendant Little Pearls. As the allegations will show, Defendant Fischer frequently lied to prospective adoptive clients that Little Pearls was licensed to conduct adoptions in Vietnam, so as to encourage adoptive parents to pay moneys to Little Pearls to engage in adoptive services in Vietnam.  Defendant LP was not, in fact, licensed to conduct adoptions in Vietnam between October of 2007 and March of 2008, and was not licensed to conduct adoptions

in the Nam Dinh province until March of 2008.  Defendant Fischer knew that Little Pearls lacked a license during these times, and yet continued to represent to Plaintiffs that the agency was licensed in order to collect foreign adoption fees.

51.   On September 6, 2006 the Socialist Republic of Vietnam issued a license to the Little Pearls Adoption Agency to establish a foreign office for children adoption in Vietnam.[8]

52.   On March 23, 2007 the People's Committee of Nam Dinh province gave Little Pearls Adoption Agency approval to seek a license to conduct adoptions in that province.[9]  Though this document evidenced Nam Dinh's approval of "the idea of" a license for Little Pearls, it was <u>not</u> actually a license.  Little Pearls adoptions was not actually licensed in Nam Dinh until 2008.

53.   On or about October of 2007 Defendant Fischer traveled to Vietnam.  While she was there one of the staffers at the Vietnam office of Little Pearls, Dr. Long, told Fischer that he wanted her to hire his friend, Mr. Thao, and demote her previous facilitator.

54.   Dr. Long apprised Defendant Fischer that this change in key personnel would have the effect of voiding the agency's license in that country.

55.   In the alternative Defendant Fischer, as a Vietnamese adoption professional, knew or should have known that placing Mr. Thao as the adoption facilitator would void the license to adopt in Vietnam.

56.   When Defendant Fischer returned home on or about October 4-7,  2007, she had not resolved the licensing issue.

57.   Defendant Little Pearls, therefore, was without a license to perform adoptions in

---

[8] **Ex. B.**
[9] *Id.*

Vietnam as of October 4, 2007.  Fischer knew this to be true.

**58.**   As the following individual allegations shall demonstrate, Defendant Fischer continued to represent to prospective adoptive parents that Defendant LP was properly licensed in Vietnam, despite her knowledge to the contrary.

**59.**   As the following individual allegations shall demonstrate, each of the plaintiffs experienced problems with their dossiers and adoptions because Defendant LP was not licensed.  The work that LP performed was, quite simply, worthless in the absence of a legal Vietnamese adoption license.

**60.**   On January 21, 2008 Plaintiff Elizando contacted the US Embassy in Hanoi.  The Embassy indicated that Little Pearls was licensed in Ha Nam province only.[10]   By negative implication, this communication meant that Little Pearls was *not* licensed in Nam Dinh, because the Embassy kept precise records on which province the various ASP's were licensed in.

**61.**   The Plaintiffs Craig, in response to issues they were having with their dossier, conducted an inquiry from the US Embassy website and discovered that Little Pearls was only licensed in Ha Nam.

**62.**   On or about January or February 2008, Defendant Fischer wrote to each of the Plaintiffs about the emerging licensing issues, stating that "soon" she would have a license for the Nam Dinh province.

**63.**   As the following allegations will show, Plaintiffs were shocked, given Defendant Fischer's prior statements, to learn that Little Pearls was not already licensed in Nam Dinh.

_____

[10] **Ex. J.**

**64.**   On April 26, 2008, Defendant Fischer emailed each of the families and stated that "we are pleased to inform you that the Vietnam license was issued the Department of International Adoptions on **March 12, 2008** for Little Pearls Adoption Agency, Inc. Vietnam.  A copy of the **new license** is attached.  Our license allows us to operate in the province of Nam Dinh and Ha Nam.[11]"

**65.**   Defendant LP advertised on its website, www.littlepearls.com, prior to March 12, 2008 and after October of 2007, that the Little Pearls adoption agency was licensed to perform adoptions in Vietnam.

**66.**   Defendants Fischer and Feinburg, as Directors of the Little Pearls agency, were aware of and ratified the decision to advertise that LP could conduct adoptions in Vietnam on its website prior to actually having this licensure.

**67.**   As the following individual allegations will show, Defendant Fischer knowingly represented to the Plaintiffs, and each of them, via email correspondence that LP was licensed in Vietnam between October of 2007 and March 12, 2008.

**68.**   Defendant Fischer emailed each one of the Plaintiffs a contract for services.[12]  The contract provided that LP agreed, *inter alia*, to "4. assemble documents into a dossier for presentation to adoption officials in the designated country, 5. Transfer the dossier to the designated country, … 7. Present the completed dossier to the adoption officials, 8. Receive and send referral from adoption officials to Applicant, 8. Act as liaison between adoption officials and Applicant[.][13]"  As the individual allegations will demonstrate,

---

[11] **Ex. C.,** *4/27/08 Email from Debbie Fischer to Loi Boynton.*
[12] Compl. Ex's. One, Two, Three, and Four.
[13] Compl. Ex. Two, *Contract of Robert and Suzanne Craig, 8/16/07* at *1-2; Compl. Ex. Three, *Contract of Summer Elizando, 10/10/07* at *2; Compl. Ex. Four, *Contract of Sean and Lori Boynton September 2007,* at *1-2; Compl. Ex. Five, *Contract of Kelly & Nichole Lucas, 11/6/07* at *1-2 (each containing aforesaid language.)

each Plaintiff was sent this contract, via email, prior to March 12, 2008.

**69.**   In order to perform the tasks promised in the contract in Vietnam, per the law of both Vietnam and the United States, one must be licensed to perform adoptions in Vietnam.

**70.**   In emailing this contract, Defendant Fischer implicitly warranted that LP was licensed to perform the tasks which it had contracted to do.

**71.**   In addition to the implicit representations, as the following allegations will show, Defendant Fischer had correspondence with each Plaintiff prior to March 12, 2008 where she explicitly stated that Little Pearls was licensed to perform adoptions in Vietnam and Nam Dinh.

**72.**   These representations were false because, as shall be illustrated presently, LP lacked a valid license to conduct adoptions in Vietnam when it contracted with the Plaintiffs to perform the adoptions.

**73.**   As the following particular allegations shall demonstrate, Plaintiffs paid adoption fees to Defendant LP, based on Defendant Fischer's assertions that LP was licensed to perform adoptions in Vietnam.

**74.**   Any dossier work performed or submitted by someone who was not licensed in the country or province to perform adoptions would be invalid and would have to be redone by someone with a valid license, at additional expense.

**75.**   As the individual allegations will show, Plaintiffs suffered losses because their dossiers were invalidated and they were forced to pay someone else to complete the adoptions or simply abandon the adoption.

**76.**   As the individual allegations will show, Plaintiffs were unable to complete

adoptions because they were unable, after the misrepresentations by LP's directors, to submit their dossiers within the moratorium period which the Vietnamese government set on foreign adoptions.

*The Fraud Committed Upon Plaintiffs Kevin and Nichole Lucas*

**77.**   On or about October of 2007 Plaintiff Nichole Lucas visited the web site for Little Pearls Adoptions.  The web site contained pictures of Vietnamese children which the site claimed Little Pearls could help her and her husband to adopt.  The site also stated that Little Pearls was licensed to conduct adoptions in Vietnam and the Nam Dinh province.

**78.**   On October 24, 2007 Plaintiff Lucas contacted Little Pearls Adoptions in regards to the children that she had seen pictured and listed on their website.[14]

**79.**   Defendant Fischer emailed her back on the same day and informed her that "[w]e will be posted [*sic*] 8 children from Nam Dinh in a few days as well.[15]"

**80.**   The purpose of this last communication was to represent to Plaintiff Lucas that Little Pearls was able to conduct adoptions in Nam Dinh.

**81.**   At this time, Defendant Fischer failed to mention that Little Pearls was not licensed to perform adoptions in Vietnam or the Nam Dinh province.

**82.**   On October 25, 2007 Defendant Fischer emailed the Plaintiffs Lucas a document entitled "Vietnam Program Fees." The document stated that a $12,000 "Country Fee" was to be paid for, *inter alia,* "fees in Vietnam including the expenses the orphanage, routine medical care, monthly medical exams for the child" and other various charges for preparation of legal documents and other fees.

---

[14] **Ex. F.**
[15] *Id.*

**83.**   The purpose of this document was to encourage Plaintiff Lucas to pay $12,000 because she believed it would go to paying various fees and expenses in Vietnam.

**84.**   On October 29, 2007 Defendant Fischer emailed Nichole Lucas and stated that "[a]fter the dossier is approved in Vietnam, you would travel up to 4 months."[16]

**85.**   On November 2, 2007 Plaintiff Nichole Lucas emailed Defendant Fischer and asked for information regarding travel arrangements to pick up her adopted child in Nam Dinh.  Defendant Fischer responded "Fly into Hanoi and the orphanage in Nam Dinh is 3 hours from Hanoi.  We pick you at the airport.  When I was there we stayed at the Prince Hanoi Hotel and it had just opened 2 days before.  The hotel was nice.  They will give our clients a rate of $25 per night which includes breakfast if you wanted to stay there. Then we drive you to the giving and receiving ceremony in Nam Dinh.[17]"

**86.**   This communication was intended to represent to Plaintiff that Little Pearls, and Defendant Fischer, was familiar and experienced conducting adoptions in Nam Dinh.

**87.**   Defendant Fischer failed to mention at this time that Little Pearls was not validly licensed in Nam Dinh and that the license with Vietnam had lapsed and not been restored.

**88.**   On November 4, 2007 Defendant Fischer emailed a "referral acceptance letter" to Plaintiffs Kevin and Nichole Lucas.  This letter indicated that "[w]e are very excited for you on your new addition to your family.  We know you wish to adopt baby girl NGBG510, from the Nam Dinh province."

**89.**   The purpose of this communication was to induce Plaintiffs to believe that Defendant Little Pearls was licensed to perform adoptions in Nam Dinh.

**90.**   When she sent this email about adopting a child in Nam Dinh through LP,

---

[16] *Id.*
[17] *Id.*

Defendant Fischer failed to mention that Little Pearls was not licensed in Vietnam or Nam Dinh.

**91.** Defendant Fischer also failed to mention at this time that the US Embassy had issued an Adoption Warning for Vietnam.

**92.** The November 4th email also recited a schedule of various fees that should be paid to Little Pearls Adoptions, totaling $19,500, which were required to be paid before Plaintiffs would be given a "referral." This schedule of fees included a $6,000 down payment on the "in country fees."

**93.** Plaintiffs paid the $19,500, including $6,000 for "in country fees," to Little Pearls based on Defendant Fischer's representations that Little Pearls Adoptions was licensed in Nam Dinh and could complete an adoption of the child.

**94.** Plaintiffs Kevin and Nichole Lucas entered into a contract with Defendant LP on or about November 2007 to adopt a child in the Nam Dinh Province of Vietnam.[18]

**95.** In accepting a "referral fee" and promising to complete the adoption, Defendant Fischer impliedly asserted that Little Pearls was licensed to perform adoptions in Vietnam and Nam Dinh.

**96.** Defendant Fischer failed to mention at this time that LP was not licensed in Nam Dinh nor Vietnam.

**97.** Defendant Fischer also failed to mention at this time that the US Embassy had issued an adoption warning for Vietnam, and neglected to mention that Little Pearls was neither licensed in Vietnam nor the Nam Dinh province at this time.

**98.** The Plaintiffs Lucas agreed to pay "adoption fees" to Little Pearls at this time,

---

[18] Compl. Ex. Four.

18

because they believed Little Pearls to be validly licensed and because they did not know of the US Embassy's warning regarding foreign adoptions.

**99.**   Later in November 2007, Defendant Fischer told Plaintiff's Lucas "The little girl you found on the internet is yours! You should have her home in January or February 2008 but at the latest, she will be home with you in April 2008."

**100.**   On January 21, 2008 Defendant Fischer emailed Plaintiff Nichole Lucas and told her "I received a letter from Mr. Dao the Senor legal expert of the Department of Intercountry Adoption of Vietnam.  writing [*sic*] on behalf of Dr. Long.  He stated they are waiting for the consent of the People's Committee on our new office location.  Upon receipt thereof, we can add it in your license.  I will update you soon."[19]

**101.**   This was the first time Plaintiff Lucas had heard anything about Little Pearls not being licensed in Nam Dinh.   Up until this point, Plaintiff Lucas believed, based on Defendant Fischer's representations, that LP was licensed in that province.

**102.**   On January 31, 2008 Defendant Fischer wrote the Plaintiffs Lucas in response to their panicked inquiry into the licensing issues and informed them that she had "hired a Tampa, Florida attorney, Lynne L. England, to assist [her] with these matters."  She also stated that "the **meeting we had scheduled with [Defendant] Ric Feinberg** … had to be changed[.]"   The letter also noted that "Mrs. England and I **met with Ric Feinburg yesterday**[.][20]"  (Emphasis added.)

**103.**   This letter proves that Defendant Feinberg was involved in the operations of Little Pearls right through to the licensing debacle.

**104.**   As the foregoing demonstrates, when Defendant Fischer finally had to start

---

[19] **Ex. F.**
[20] *Id.*

admitting that she had falsely stated that Little Pearls was licensed, the first thing she did was met with Feinburg.

**105.** Defendants Fischer and Feinburg knew, or reasonably should have known, that the Little Pearls Adoption Agency was not licensed to perform adoptions in the Vietnam of the Nam Dinh province of Viet Nam during the period of time in which they contracted to perform the Plaintiffs Lucas' adoption in Nam Dinh.

**106.** Defendants intended for the Plaintiffs to rely on the assurances that they could complete the adoption in Vietnam.

**107.** The Plaintiffs Lucas did rely on the Defendants assurances in paying adoption fees to Defendant Little Pearls.[21]

**108.** The Plaintiffs Lucas were injured when no adoption was performed and their fees were wasted on an invalid dossier.

**109.** Plaintiffs Lucas were matched with a child and began to love this child during the adoption and were heartbroken when the adoption could not be completed.

**110.** On January 31, 2008 Plaintiff Nichole Lucas emailed Defendant Fischer and demanded that she turn the couple's dossier over to a new adoptive agency she had contacted. Further, she demanded an immediate refund of the adoptive fees that she had paid to Defendant LP.[22]

**111.** To date, they have not received any refund from Defendant Little Pearls, from Defendant Fischer, or Defendant Feinburg.

**112.** On or about May 2, 2008 Marie "Liane" LaTrace, an employee at Little Pearls' Vietnam office, emailed the Plaintiffs Lucas and informed them that "I want to tell you

---

[21] **Ex. H.**
[22] *Id.*

about difficulties that Ms. Debbie [Defendant Fischer] given to us, for example, she told a lie at the Justice Department and other adoption family that she sent us money to paying for office and employees and procedure.  **But in fact, we receive no money from her and from Little Pearls adoption agency in Us.**  ….  So one more time, we are sure that, Ms Debbie do not pay no money for us and we are, Mr. Lam and Mrs. Marie are the people who directly do these paperwork for adoption family.[23]"

**113.**  Marie informed Plaintiffs, in subsequent telephone communications, that Defendant Fischer "went away" and she "wanted to help the babies."  She claimed that she had the couple's dossiers in the office and that they were "ready to go" and adopt.[24]

**114.**  Marie stated in telephone communications that neither she, nor the office staff of Waiting Angels' Vietnam Office, **had been paid in five months**.  She also informed the couple that the rent was due on the office and if it was not paid, the office would be closed and the dossiers would be rejected.[25]

**115.**  Because of the conversations with Marie, Plaintiffs learned that Defendant Fischer's assertion that Plaintiffs were being charged $12,000 to be paid in Vietnam for "country fees" had been false.

**116.**  The Plaintiffs Lucas, along with several other families, agreed to pool their resources to pay for the Vietnam office to stay open so that their adoptions could be completed.[26]

**117.**  Plaintiffs received repeated assurances from the staff at the Vietnam office that the adoptions were possible, despite the Vietnamese government's impending moratorium on

---

[23] **Ex. G.**
[24] **Ex. I.**
[25] *Id.*
[26] *Id.*

adoptions.

**118.** As it turned out, the assertions were faulty.  The Plaintiffs Lucas were prevented from adopting their child because the process was not successfully completed by September 1, 2008.

**119.** Plaintiffs Kevin and Nichole Lucas were never able to complete their adoption.

**120.** Plaintiffs Kevin and Nichole Lucas ("Plaintiffs Lucas") have spent over $40,000.00 in pursuit of the adoption that they were induced into entering on or about November 2007.

**121.** Plaintiffs were damaged financially and emotionally by the Defendants fraudulent inducement into the contract and the failure of the Defendants to perform the contract.


  *Plaintiffs Sean and Lori Boynton*

**122.** In October of 2007 the Plaintiffs Sean and Lori Boynton accessed the Defendant Little Pearls' website, www.littlepearls.com. The website pictured several children from Vietnam who were "available for adoption."  The website stated that Little Pearls was licensed to perform adoptions in Vietnam and the Nam Dinh province of Vietnam.

**123.**  After viewing this information on the Little Pearls website, Plaintiffs Sean and Lori Boynton ("Plaintiffs Boynton") inquired with Defendant LP for information about adopting a Vietnamese child.[27]

**124.** On October 23, 2007 Defendant Fischer emailed Plaintiffs Boynton a "prospective parent form letter" which promised that the adoptive process would take 4-6 months after

---

[27] **Ex. D.,** *Various email correspondence between Def. Fischer and Pl.'s. Boynton.*

the dossier would be submitted.[28]

**125.**  On this date, Defendant Fischer also emailed the Plaintiffs Boynton a copy of Little Pearls' "contract for adoptive services" which promised that Little Pearls would perform various "adoptive services" that **required licensure in Vietnam** in exchange for payment.

**126.**  Plaintiffs Sean and Lori Boynton signed the contract with Defendant LP on or about October 2007 to adopt a child in the Nam Dinh Province of Vietnam.[29]

**127.**  Defendant Fischer did not mention prior to the Plaintiffs Boynton's signing of this contract that Little Pearls was not licensed to perform adoptions in Vietnam or Nam Dinh.

**128.**  Plaintiffs Sean and Lori Boynton relied upon their belief that Little Pearls was licensed to conduct adoptions in Vietnam in deciding to sign the contract for adoption services with LP.

**129.**  Plaintiffs Sean and Lori Boynton paid money to Defendant Little Pearls as a result of Fischer's intentional misstatements and assertions that the agency was properly licensed to conduct adoptions in Vietnam.

**130.**  On October 31, 2007 Defendant Fischer emailed Lori Boynton a copy of the March 23rd, 2007 People's Committee letter authorizing Little Pearls to seek a permit to conduct adoptions in Nam Dinh.[30]

**131.**  This was intended to allay concerns that the Boynton's had about the licensing status of the organization and incite them to pay a balance of fees on their account.

**132.**  This communication was intended to induce the Plaintiffs Boynton into believing

---

[28] **Ex. D.**
[29] Compl. Ex. Three.
[30] **Ex. D.**

that Defendant LP was properly licensed to conduct adoptions in Nam Dinh.[31]

**133.** Defendant Fischer did not mention at this time that Little Pearls was not actually *licensed* to conduct adoptions in Nam Dinh.  Nor did Defendant Fischer mention that Little Pearls' Vietnamese license was invalid as of late September – early October of 2007 and was not reinstated at this time.

**134.** The communication was intentionally misleading, in light of the fact that LP was not properly licensed to perform adoptions in Vietnam until **March 12, 2008**.

**135.** Because of this intentionally misleading communication, the Defendants Boynton paid money to LP under the contract to perform the adoptive services.

**136.** On November 4, 2007 Defendant Fischer emailed the Plaintiffs Boynton a letter stating that their application to adopt "Baby Girl NGBG518, from the Nam Dinh province" had been approved.  This communication required immediate payment of $19,500 in fees in order to start the adoption.[32]

**137.** Defendant Fischer did not mention at this time that Little Pearls was not licensed to perform adoptions in Nam Dinh. Nor did she mention that Little Pearls' license in Vietnam was invalid.

**138.** Believing that LP was properly licensed to conduct the adoption, and that the adoption was legal and in accord with Vietnamese law, Plaintiffs Boynton paid $15,000 to Defendant LP in adoption fees at this time.

**139.** The November 4 communication also required the Boyntons to pay $6,000 for "Country Fees" at this time, which were supposed to pay for various fees to Vietnamese adoption officials.

---

[31] *Id.*
[32] **Ex. D.**

**140.** Plaintiffs relied on this assertion that the fees would, in fact, be paid for adoption expenses in Vietnam in paying the November 7 charges.

**141.** It was later discovered, by the Plaintiffs Lucas (above), that Defendant Fischer never, in fact, paid anything to the Vietnam office.  Defendants Fischer and Feinburg simply collected moneys they claimed were to be paid in Vietnam and then pocketed the cash.

**142.** Plaintiffs were injured when they were forced to either pay the country fees a second time to a different agency, or give up on the adoption.

**143.** Defendant Fischer required fees to be paid before they would give the Plaintiffs Boynton a referral (a child to be held for the adoptive family) to assure that the child would be available for adoption. Plaintiffs relied on these assurances and wired money to the Defendants.

**144.** Defendants intended for the Plaintiffs to rely on the assurances that they could complete the adoption in Vietnam.

**145.** Plaintiffs did rely on the Defendants assurances, and paid various "adoption fees" to Defendant LP, and no adoption was performed.

**146.** The Plaintiffs Boynton were matched with a child by Defendant Fischer and began to love this child during the adoption and were heartbroken when the adoption could not be completed.

**147.** The adoption could not be completed because Defendant LP, despite Defendant Fischer's assertions to the contrary, was not properly licensed to perform adoptions in Vietnam.

**148.** Defendant Feinburg, as a director of LP, is liable for the fraudulent acts of other

members of the organization committed on behalf of the organization.

**149.** Defendant Feinburg ratified and approved of Fischer's behavior.

**150.** Defendant Feinburg is subject to liability under the RICO statute's version of conspiracy liability, which differs significantly from the standard of accomplice liability of the traditional criminal law.

**151.** Plaintiffs were damaged financially and emotionally by the Defendants fraudulent inducement into the contract and the failure of the Defendants to perform the contract.

**152.** Plaintiffs Sean and Lori Boynton have spent over $15,000.00 in pursuit of the adoption that they were induced into entering.


*Plaintiffs Suzanne and Robert Craig*

**153.** The Craigs received numerous emails from Defendant Fischer which serve to chronicle all of the false and misleading statements she made to them in detail sufficient to withstand a Rule 9(b) challenge.  Recent investigation has revealed that the Craigs submitted all of these email communications to their counsel in this matter, the Fixel Law Offices at the start of this litigation and are presently unable recover copies from within their own records.  A disgruntled former paralegal of Fixel Law, Paula Cade, is in possession of the information and has refused requests to submit the information in an attempt to extract an invalid "balance owed", despite her ethical duty to produce this information.  Plaintiffs will use the Court's subpoena power, pursuant to Fed.R.Civ.Pr. 34 and 45, to reacquire the wrongfully withheld information.[33]  The Plaintiffs Craig would request that this Honorable Court not prejudice their position because of actions

---

[33] *See* **Ex. K** (Proposed subpoena and affidavit to Paula Cade, Plaintiffs reserve the right to amend this document to conform to Southern District of Illinois requirements.)

attributable to their counsel and grant them leave to amend with more particularity when these documents are recovered from the former paralegal. In the alternative, the Plaintiffs Craig would request that the Court grant them access to the discovery process to recover the documents from Defendant's records, as the Defendants are now in sole possession of this information, prior to dismissal for failure to satisfy the 9(b) particularity requirement.

**154.** In May of 2007 the Plaintiffs Craig began investigating the possibility of adopting a child from China, because their eldest daughter was also from that country. However, they discovered that the wait time was approximately 2 years and, instead, began looking into the newly opened Vietnamese adoption process.

**155.** The Craigs contacted approximately 36 agencies to find one that had toddlers available. During this search, the Craigs encountered the Little Pearls agency, who had pictures of a little girl who looked just like their daughter from China.

**156.** In August of 2007, the Plaintiffs Craig found the child pictured on www.littlepearls.com. The website indicated that Little Pearls was licensed to perform adoptions in Vietnam, and in the Vietnamese province of Nam Dinh.

**157.** Plaintiffs Suzanne and Robert Craig ("Plaintiffs Craig") entered into their contract first with An Angelic Choice and later through addendum with Defendant LP on or about August 2007 to adopt a child in the Nam Dinh Province of Vietnam.[34]

**158.** On August 16, 2007 Defendant Fischer emailed the Plaintiffs Craig a contract which, as previously discussed, promised to perform various adoptive services in the Nam Dinh province of Vietnam that **required licensure in that province** to perform.

---

[34] Compl. Ex. One.

**159.** Defendant Fischer failed to mention at this time that Little Pearls was not properly licensed in Nam Dinh.

**160.** The Plaintiffs Craig relied upon their reasonable belief that Little Pearls was properly licensed to perform adoptive services in Nam Dinh when they signed the contract on August 17, 2007 and paid $13,500 in adoption fees to Defendant Little Pearls.

**161.** Of the 13,500 they paid in August of 2007, Defendant Fischer warranted that $6,000 of these charges were for "country fees" which Defendant Fischer warranted were for expenses payable to Vietnamese agents and entities for completion of the adoption.

**162.** The Plaintiffs Craig paid this $6,000 in fees due to Defendant Fischer's assertion that they would be used for this purpose.  This assertion later proved to be false.

**163.** In October of 2007, the Plaintiffs Craig found out that Little Pearls was not licensed in Nam Dinh.

**164.** On November 14, 2007 Defendant Fischer called the Plaintiff Suzanne Craig and informed her that the little girl she had been attempting to adopt had been adopted by a "a diplomat family in another country."

**165.** On November 23, 2007 Defendant Fischer offered the Plaintiffs Craig a child which did not quite meet the preferences from their home study but, claimed Fischer, could be adopted in "2-4 Months."

**166.** Defendant Fischer did not mention at this point that Little Pearls had lost its license in Vietnam the month before.

**167.** Defendant Fischer did not mention at this point the foreign adoption warning which the US Embassy in Hanoi had published.

**168.** Because Plaintiffs believed that the new child which was offered could be adopted,

they agreed to stay with Little Pearls rather than request a refund at this time.

**169.** Defendant LP, then, was able to dodge a rightful request for refund based on their false assertion that they were still licensed in Nam Dinh.

**170.** When the adoption proved impossible, due to the lack of licensure, the Plaintiffs lost the money they had paid for the adoption, and the opportunity to adopt due to the change in Vietnamese foreign adoption law.

**171.** In sum, Defendant Fischer impliedly represented in her email communications that LP was licensed in Vietnam by contracting to perform an adoption in Vietnam and by promising that she could perform the adoption. Employees of LP, who are not as yet identified, advertised on LP's website that LP was licensed to perform adoptions in Vietnam and Nam Dinh. The Plaintiffs Craig paid adoption fees to LP as a result of Fischer's false representations that LP was licensed to perform adoptions. LP was not, in fact, licensed to perform adoptions in Nam Dinh nor Vietnam until **March 12, 2008**.

**172.** Plaintiffs Craig lost all of the money that they had paid in adoption fees when their paperwork was rejected because LP was not licensed.

**173.** Defendant Feinburg, as a director of LP, is liable for the fraudulent acts of other members of the organization committed on behalf of the organization.

**174.** Defendant Feinburg ratified and approved of Fischer's behavior.

**175.** Defendant Feinburg is subject to liability under the RICO statute's version of conspiracy liability, which differs significantly from the standard of accomplice liability of the traditional criminal law in that the "overt act" requirement is relaxed.

**176.** The Plaintiffs Craig had the opportunity to adopt a Vietnamese Orphan from another region using a different adoption agency but Defendant Fischer assured them that

she could complete the adoption in the Nam Dinh province.

**177.** The Plaintiffs Craig relied upon Defendant Fischer's representation that she could complete the adoption in choosing not to pursue the adoption though the other agency. Plaintiffs Craig could not complete the adoption through the other agency before the cutoff moratorium date on foreign adoptions because Defendants Fischer and Feinburg had taken all of their money and refused a refund.

**178.** Plaintiffs were damaged financially and emotionally by the Defendants fraudulent inducement into the contract and the failure of the Defendants to perform the contract.

**179.** Plaintiffs Suzanne and Robert Craig  have spent over $50,000.00 in pursuit of the adoption that they were induced into entering by the intentionally false assertions of Defendant Fischer, encouraged and ratified by Defendant Feinburg.


*Plaintiff Summer Elizando*

**180.** In approximately October of 2007 Plaintiff Summer Elizando found a listing for Vietnamese adoptions on Defendant LP's website, www.littlepearls.com. The website contained pictures of adoptable children in Vietnam and stated that Defendant LP was properly licensed to perform adoptions in Vietnam and the province of Nam Dinh and Ha Vinh in Vietnam.

**181.** On or about October 4, 2007 Plaintiff Elizando contacted the Little Pearls agency in reference to a foreign adoption.

**182.** On October 4, 2007 Defendant Fischer emailed Plaintiff Elizando and stated that "[w]e have joined forces with Little Pearls Adoption Agency, Inc. and **they are valid**

**and current license in Vietnam**."[35]

**183.** On October 4, 2007 Defendant Fischer sent another email to Plaintiff Elizando which stated "[i]f you wanted a baby girl from Nam Dinh we will have photos posted later today or tomorrow and the medicals on Saturday[.]"[36]

**184.** As the above allegations indicate, Defendant Fischer intentionally represented to Plaintiff Elizando that Little Pearls was validly licensed to perform adoptions in the Nam Dinh province of Vietnam. These representations were made to encourage Plaintiff Elizando to pay monies to Defendant LP to perform a Vietnamese adoption.

**185.** Plaintiff Elizando ultimately paid adoptive fees to Defendant Little Pearls based on Fischer's false assertions that LP was properly licensed to perform adoptions.

**186.** On October 9, 2007 Defendant Fischer emailed Plaintiff Elizando information about a "baby TNTWO" who was eligible for adoption in Ha Vinh province.[37]

**187.** Defendant Fischer failed to mention at this time that LP's Vietnam license was invalid as of approximately October 7.

**188.** Plaintiff Summer Elizando, in reliance on Defendant Fischer's representation that LP was licensed to facilitate adoptions in Vietnam and Ha Vinh province, entered into a contract with Defendant LP on or about October 10, 2007 to adopt the child.[38]

**189.** On October 15, Plaintiff Elizando applied for a credit card in order to pay the adoption fees which Defendant Fischer required to complete the adoption.[39]

**190.** On November 5, 2007 Defendant Fischer emailed Plaintiff Elizando a Letter of Introduction for the child in the Ha Vinh orphanage.

---

[35] **Ex. J.**
[36] **Ex. J.**
[37] *Id.*
[38] Compl. Ex. Two.
[39] **Ex. J.**

**191.** This letter of introduction also included a request for payment of approximately $13,500 in fees. $6,000 of those fees, due immediately, were for "country charges" which Defendant Fischer represented were to be paid to Vietnamese officials and agencies in fees for the adoption in question.

**192.** This communication constituted an implied representation that Little Pearls was licensed to perform an adoption in Ha Vinh, Vietnam and was designed to incite Plaintiff Elizando to continue making payments on the adoption fees which Defendant Fischer was collecting on Defendant LP's behalf.

**193.** Defendant Fischer failed to mention when she sent the November 5 letter that Little Pearls was not properly licensed in Ha Vinh province. And, she failed to mention that LP's license in Vietnam had become invalid and had not been renewed since October of 2007.

**194.** In reliance on this representation that Defendant LP was properly licensed to conduct an adoption in Ha Vinh, Vietnam Plaintiff Elizando paid adoption fees to LP in order to complete the promised adoption.

**195.** On January 2, 2008 Defendant Fischer emailed Plaintiff Elizando and stated that "**[w]e had made changes to our staff with our new representative in September when we were there. They are making those changes to our license as well as approving our <u>new license</u> for the new province.**"[40]

**196.** Prior to this communication, Plaintiff Elizando had no reason to believe that Little Pearls was not properly licensed to conduct the adoption for which she had paid.

**197.** On January 16, 2008 Plaintiff Elizando emailed Defendant Fischer the following

---

[40] *Id.*

message: "I am sorry to keep emailing you and I know that you when you hear a definite you will email us all. However, I am really concerned! I am concerned that I will not be able to adopt from Vietnam or I may lose my referral. I am concern that I may lose my money that I have already given. If that happens I can't adopt again, I am out of funds. I know that there is risk when adopting international however…! I am also worried that we will not be grandfathered in if the US and Vietnam doesn't sign in March. It is my understanding that there is a meeting on January 24, 2008 that will explain new procedures for adoption. Will you be attending this meeting? If something happens and LP doesn't get the license and I can't adopt through LP will I receive my Dossier/Money back? Has the facilitator in Vietnam started to look at our dossiers? What if there is a problem with my paperwork and it needs to be fixed and it doesn't make it before February, 7 2008? Please advise me on the above!"[41]

**198.** Defendant Fischer responded, in an email dated January 17, 2008, that "I have a new representative in Vietnam who is talking with Dr. Long to see about the 2 changes they are making and when it will be issued to process with the adoptions. She has worked for 8 years there in adoptions. I have been working on this round the clock to find the right solution."[42]

**199.** Unsatisfied by Fischer's response, Plaintiff contacted the US Embassy in Hanoi and enquired as to Little Pearls' licensure status. The embassy, after checking its records, found that Little Pearls was licensed in <u>Ha Nam only</u> and, therefore, was not licensed to perform the adoption in <u>Nam Dinh</u> or <u>Ha Vinh</u> as promised.[43]

**200.** After receiving this news from the US Embassy, Plaintiff Elizando emailed

---

[41] *Id.*
[42] *Id.*
[43] *Id.*

Defendant Fischer the following:  "PLEASE FAX ALL INFORMATION TO [Pl's Fax number omitted] OR EMAIL THE INFORMATION TO ME DIRECTLY.  PLEASE, **I CANT ASK YOU ENOUGH TO JUST COMMUNICATE WITH US AND TELL US THE TRUTH**.  February 7 IN COMING FAST AND ACCORDING TO YOU WE WOULD HAVE OUR PAPERWORK INTO DIA BEFORE THEN."  (Capitalization in original, emphasis added.)[44]

**201.**  Plaintiff also indicated to Fischer at this time "YOU   SHOULD   ALSO   KNOW THAT **I HAVE CONTACTED RIC [Defendant Feinburg]** AND WILL CONTINUE TO CALL UNTIL I HEAR FROM SOMEONE, SOMEONE AT LITTLE PEARLS." (Capitalization in original, emphasis added.)[45]

**202.**  Plaintiff Elizando followed this communication up with a January 23, 2008 demand email to Defendant Fischer for various pieces of information, including the "old Vietnam license" and a "copy of your license."[46]

**203.**  Defendant Fischer responded to Plaintiff Elizando's January 23 demand on January 24, 2008 by emailing Plaintiff Elizando a document entitled "Vietnam license til 2011.jpg."[47]

**204.**  Upon information and belief, this communication contained a copy of the Nam Dinh certificate, which Defendant Fischer purported to be a license but was not, which was sent to the Plaintiffs Boynton, as discussed previously.

**205.**  Defendant Fischer emailed Plaintiff Elizando a document purporting to be a license in an attempt to represent to her that Little Pearls was validly licensed to conduct

---

[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*

adoption in Vietnam, based upon her demand to substantiate their license.

**206.** Plaintiff Elizando declined to demand a refund at this time, given the false representation by Fischer that the agency was licensed at this time.

**207.** On January 28, 2008 Defendant Fischer emailed Plaintiff Elizando and stated that "**[Defendant] Ric Feinburg has been in touch with Mr. Thao our Vietnam representative**.  Mr. Thao is working on it.  I will keep you updated."

**208.** On January 30, 2008 Defendant Fischer emailed Plaintiff Elizando and stated "I am **having a meeting this evening with [Defendant] Ric Feinberg** [*sic*].  I will update you after the meeting."  (Emphasis added.)

**209.** The meeting with Feinburg did not yield a productive solution to the problem.

**210.** In sum, Defendant Little Pearls advertised on its website that the agency was properly licensed in Vietnam and Ha Vinh when they were not.  Defendant Fischer emailed Plaintiff Elizando a contract which promised, as discussed previously, to perform various adoptive services that required proper licensure in Vietnam.  By sending this contract, Defendant Fischer impliedly represented that LP was licensed in Vietnam to perform adoptions.  Defendant Fischer expressly told Plaintiff Elizando that LP was licensed in Vietnam and Ha Vinh when she knew those statements to be false.

**211.** Ultimately, Plaintiff Elizando was unable to complete the adoption she had started with Defendant LP because LP was not properly licensed to perform adoptions in Vietnam.

**212.** Further, Plaintiff Elizando had begun the process of adopting a child from Guatemala when she was induced into using Defendant LP and switched to adopt from Vietnam.  She gave up this opportunity to pursue an adoption from Little Pearls, based on

Defendant Fischer's false assertions.

**213.** Plaintiff Ellizando, drained to her last cent, was unable to afford the additional expense of hiring a different agency complete the adoption.

**214.** To date, Plaintiff Elizando has received no reimbursement for the moneys she lost a result of the false representations of Fischer, encouraged and ratified by Feinburg. And, she was robbed of her chance to adopt a child because of Little Pearls' failure to complete the adoption.

**215.** Plaintiff Elizando was matched with a child and began to love this child during the adoption and was heartbroken when the adoption could not be completed.

**216.** In summary, Plaintiff Elizando paid adoption fees to LP as a result of Fischer's false representations that LP was licensed to perform adoptions as of October 10, 2007. LP was not, in fact, licensed to perform adoptions in Nam Dinh nor Vietnam until March 12, 2008. Plaintiff Elizando lost all of the money that had paid in adoption fees when their paperwork was rejected because LP was not licensed.

**217.** The aforesaid allegations prove that Plaintiff relied upon the Defendant Fischer's assurances that LP was licensed to perform the adoption and that the adoption was legal under Vietnam law when she paid adoption fees to Defendant LP.

**218.** No adoption was performed or completed.

**219.** Defendant Feinburg, as a director of LP, is liable for the fraudulent acts of other members of the organization committed on behalf of the organization.

**220.** Upon information, belief, and reasonable inference from the aforesaid facts, Defendant Feinburg was aware, or should have been aware, that Defendant LP was not properly licensed to perform adoptions and ratified and approved of Fischer's false

representation of the capabilities of the organization..

**221.** Defendant Feinburg is subject to liability under the RICO statute's version of conspiracy liability, which differs significantly from the standard of accomplice liability of the traditional criminal law in that the "overt act" requirement is relaxed.

**222.** Plaintiff Summer Elizando ("Plaintiff Elizando") has spent over $28,000.00 in pursuit of the adoption that she was induced into entering.

**223.** Plaintiff was damaged financially and emotionally by the Defendants fraudulent inducement into the contract and the failure of the Defendants to perform the contract.

*Summary of Fraudulent Acts Violating 18 U.S.C. § 1343*

**224.** The following paragraphs contain summaries of the detailed allegations contained above for the convenience of the Honorable Court and the defendants.  Plaintiffs will vigorously oppose use of any of the following summary statements to support an inference of impermissible "lack of particularity" in violation of Rule 9(b).

**225.** Defendant Little Pearls posted information on its website, www.littlepearls.com, claiming that the agency was licensed in Vietnam, and the provinces of Nam Dinh and Ha Vinh.  This misinformation was left up, even after Little Pearls lost its Vietnamese license in late September-early October 2007.  And, this misinformation was posted despite the fact that Little Pearls was not licensed in Nam Dinh until March 2008.  In May of 2007 the Plaintiffs Craig paid Little Pearls to start an adoption procedure for a child in Nam Dinh because they accessed this mininformation on www.littlepearls.com. In October of 2007 the Plaintiffs Lucas, the Plaintiff Boynton, and Plaintiff Elizando accessed this misinformation on the website and started an adoption because they believed that Little Pearls was properly licensed to conduct adoptions in Vietnam and

Nam Dinh.  Each Plaintiff lost money when their dossiers were invalidated because Little Pearls was not properly licensed.  To date, Little Pearls has done nothing to reimburse Plaintiffs for their losses.  Defendants Fischer and Feinburg have simply pocketed the money they collected and moved on with their lives.

**226.**  Defendant Little Pearls frequently represented to the Plaintiffs, falsely, that they were being charged a sum of $6,000 to $12,000 for "in country fees."  Defendant Fischer warranted to each Plaintiff that these "country fees" were moneys that were being collected to pay Vietnamese officials and agencies for charges related to the adoptions. On August 17, 2007 Defendant Fischer emailed the Plaintiffs Craig requesting, *inter alia*, payment of $6,000 for "country fees."  Believing this charge to be legitimate, the Craigs paid this charge.  On November 4, 2007 Defendant Fischer emailed the Plaintiffs Lucas attempting to collect $6,000 in "country fees" due on the account.  Believing that these fees would actually be paid to the sources promised, the Lucas's paid these charges.  On November 5, 2007 Defendant Fischer emailed Plaintiff Elizando a communication indicating, among other things, a $6,000 charge for "country fees."  Trusting Fischer's word, Plaintiff Elizando paid this charge.  On November 7, 2007 Defendant Fischer emailed the Plaintiffs Boynton and requested, *inter alia*, payment of $6,000 for "country fees."  The Boyntons, believing this charge to be legitimate, paid this charge.  On May of 2008 the Plaintiffs Lucas discovered that Defendant Fischer had not paid a cent to the Vietnam Little Pearls office for fees.  Defendant Fischer had, quite simply, pocketed the $24,000 she had collected from the Plaintiffs for country fees.  Plaintiffs suffered the loss of $6,000 apiece when they had to pay these fees to more reputable agencies a second time or cancel the adoptions.

**227.**  On October 31, 2007 Defendant Fischer emailed the Plaintiffs Boynton a copy of a lapsed and invalid license to conduct adoptions in the Nam Dinh province of Vietnam. This communication was designed to encourage Plaintiffs to pay monies to Little Pearls to conduct an adoption by "proving" that they were licensed to conduct such adoptions. As it turned out, Little Pearls' license was not valid at that time.  The Plaintiffs Boynton paid money to Little Pearls based on Fischer's assertion that Little Pearls was licensed and lost money when it came to light that they weren't.  Using the wires to transmit false information which was designed to, and did in fact, cause another part with things of value under false pretenses is a violation of 18 USC 1343.  Defendant Feinburg, as a director of Little Pearls, approved and ratified Defendant Fischer's transmission of this false information.

**228.**  On August 16, 2007 Defendant Fischer emailed a "contract for adoptive services" to the Plaintiffs Craig.  On October 10, 2007 Defendant Fischer emailed a "contract for adoptive services" to Plaintiff Elizando.  On October 23, 2007 Defendant Fischer emailed a "contract for adoptive services" to the Plaintiffs Boynton.  On November 6, 2007 Defendant Fischer emailed a "contract for adoptive services" to the Plaintiffs Lucas.  The contract implicitly represented that Little Pearls was licensed to perform adoptions in Vietnam by promising to perform adoptive services for which a license to perform adoptions in Vietnam was required.  Each of the Plaintiffs paid money to Little Pearls based on Fischer's assertion that Little Pearls was licensed and lost money when it came to light that they weren't.  Using the wires to transmit false information which was designed to, and did in fact, cause another part with things of value under false pretenses is a violation of 18 USC 1343.  Defendant Feinburg, as a director of Little Pearls,

approved and ratified Defendant Fischer's transmission of this false information.

**229.** On or about October 23, Defendant Fischer emailed the Plaintiffs Boynton a "prospective parent letter," which was in accordance with the standard procedures and practices of Little Pearls Adoptions. The letter provided that an adoption of a Vietnamese child could be completed within 4-6 months. Defendant Fischer knew, or reasonably should have known, that such an adoption was impossible in light of the fact that such an adoption would be impossible in light of the Vietnamese adoption scandal and changing regulatory environment. Plaintiffs were induced into paying adoption fees by the false assertion that such adoptions were legally possible. Using the wires to transmit false information which was designed to, and did in fact, cause another part with things of value under false pretenses is a violation of 18 USC 1343. Defendant Feinburg, as a director of Little Pearls, approved and ratified Defendant Fischer's transmission of this false information.

**230.** On or about August 16, 2007 Defendant Fischer emailed the Plaintiffs Craig a "prospective parent letter." On or about October 10, 2007 Defendant Fischer emailed Plaintiff Elizando a "prospective parent letter." On or about November 6, 2007 Defendant Fischer emailed the Plaintiffs Lucas a "prospective parent letter." In each case, the letter provided that an adoption of a Vietnamese child could be completed within 4-6 months. Defendant Fischer knew, or reasonably should have known, that such an adoption was impossible in light of the fact that such an adoption would be impossible in light of the Vietnamese adoption scandal and changing regulatory environment. Plaintiffs were induced into paying adoption fees by the false assertion that such adoptions were legally possible. Using the wires to transmit false information which was

designed to, and did in fact, cause another part with things of value under false pretenses is a violation of 18 USC 1343.  Defendant Feinburg, as a director of Little Pearls, approved and ratified Defendant Fischer's transmission of this false information.

**231.**  Defendant Fischer has also lied to each of the Plaintiffs by omission as well. Defendant Fischer allowed the Plaintiffs Craig to sign a contract to perform adoption services in Nam Dinh on August 16, 2007.[48]  LP was not licensed in Nam Dinh at that time.  Defendant Fischer knew, or should have known that, and she declined to give the Craigs this information and instead incited them to sign a contract which she knew, or should have known, LP could not complete and collected money from them based on that contract.  In September of 2007 Defendant Fischer encouraged the Plaintiffs Boynton to sign a contract to perform adoption services in Nam Dinh.[49]  Defendant Fischer knew or should have known that LP was not licensed in Nam Dinh at that time and kept quiet about this fact while she took the Boynton's money.  In October of 2007 Defendant Fischer encouraged Plaintiff Elizando to sign a contract for LP to perform adoption services in Ha Vinh.[50]  Defendant Fischer knew or should have known that LP was not licensed in Ha Vinh ever, and was not licensed in Vietnam at that time and failed to proffer this vital information.  Finally, Defendant Fischer encouraged the Plaintiffs Lucas to enter into a contact to perform adoptive services for a child in Nam Dinh with LP on October 6, 2007[51] without mentioning that LP was not licensed in that province or in Vietnam at that time.  Each Plaintiff suffered losses as a result of using an unlicensed adoption agency when their dossiers were proven invalid.  These fraudulent omissions

---

[48] Compl. Ex. Two.
[49] Compl. Ex. Four.
[50] Compl. Ex. Three.
[51] Compl. Ex. Five.

occurred in communications conducted over email and telephone and, therefore, are in violation of 18 USC 1343.

**232.** As a whole, Defendants Fischer and Feinburg regularly presented false information via email in order to entice adoptive parents to pay monies in adoptive fees to the Defendant Little Pearls.  Therefore, Little Pearls' regular way of doing business involved habitual violation of 18 USC 1343.


**COUNT ONE**
**BREACH OF CONTRACT**
**FRAUD IN THE INDUCEMENT**

**233.** Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal assertions contained in the previous numbered paragraphs.

**234.** Of necessity, the following contains summary statements of the detailed allegations above.  Plaintiffs will vigorously oppose a Rule 9(b) challenge based on the summary statements contained herein as they are all supported by prior detailed allegations.

**235.** Defendants Fischer and Feinburg have engaged in a scheme to induce hopeful adoptive parents into using their agency by advertising on their website that they could complete adoptions of Vietnamese orphans, by falsely warranting that they were licensed to conduct adoptions in Vietnam's Nam Dimh and Ha Vinh provinces, and by failing to state that adoptions in Vietnam were risky due to a change in the regulatory environment which should have been apparent and foreseeable to them at the time of contracting.

**236.** Defendant LP's website advertised that LP was licensed to perform adoptions in Vietnam, Nam Dinh and Vinh Ha when it was not.  Defendant Fischer, as an agent of Defendant LP, and as further delineated above, explicitly represented that LP was

licensed to perform Vietnamese adoptions and implicitly warranted this fact by entering into contracts to perform Vietnamese adoptions.  Further, when forming the contracts to perform adoptive services, she omitted to mention the fact that LP was not properly licensed to perform the services she was contracting to perform.

**237.**  Plaintiffs were induced into using the services of Defendant LP and its employees by the advertisements and statements by Fischer purporting Defendant LP as being specialists in this area of adoptions of orphans from Vietnam and claiming that LP was licensed to perform adoptions in Vietnam.

**238.**  Each of the plaintiffs entered into a contract with Defendant LP in which Plaintiffs would pay money to Defendant LP to perform and facilitate an adoption in the Nam Dimh province.

**239.**  The plaintiffs, and each of them, lost adoption fees when it was discovered that LP, contrary to Defendant Fischer's statements, was not properly licensed to perform adoptions and that all of the "services" that it had provided were worthless.

**240.**  Defendant Fischer took money and other than excuses produced nothing to complete adoptions.  Defendant Feinburg ratified and encouraged Defendant Fischer's activities in this respect.  Defendants acted with the intent to take the money without completing the adoptions.

**241.**  The Defendant LP's advertisements and statements purporting that they were adoption experts and professionals in this area were fraudulent and intended to bring prospective adoptive parents to use their business services.

**242.**  Plaintiffs were induced into using the Defendants' services through these advertisements and statements.

**243.** Defendants have damaged the Plaintiffs by inducing them into using their adoption services and then incompetently failing to complete them.

**244.** Further, Defendant Fischer represented to each of the Plaintiffs that $6,000 of the fees that they were being charged were to be paid for "in country fees," fees which were to be collected and paid to Vietnamese agencies in preparation of adoption documents.

**245.** Plaintiffs later found that nothing had been paid to the Vietnamese office of LP. Defendants Fischer and Feinburg had simply collected these fees, and then pocketed the cash.

**246.** Plaintiffs suffered losses when, in order to continue their adoptions, they had to pay these fees a second time to a reputable agency or simply forego their efforts to adopt.

**247.** As a whole, Plaintiffs have demonstrated losses related to false statements made by Defendant Fischer which were encouraged and ratified by Defendant Feinburg.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants in an amount in excess of $140,000.00 and further demands an award of punitive and exemplary damages together with attorney's fees and costs of this action against Defendants.

<u>**COUNT TWO**</u>
<u>**BREACH OF CONTRACT**</u>

**248.** Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal assertions contained in the previous numbered paragraphs.

**249.** Of necessity, the following contains summary statements of the detailed allegations above. Plaintiffs will vigorously oppose a challenge based on the "lack of particularity" of the summary statements contained herein as they are all supported by prior detailed

allegations.

**250.** Plaintiffs entered into contracts with Defendant LP for the facilitation of Vietnamese Adoptions. Defendant Fischer sent the contacts and Defendant Feinburg ratified Defendant Fischer's actions.

**251.** On or about August through November 2007, Plaintiffs and Defendant LP entered into contracts to adopt children from Vietnam.

**252.** Plaintiffs agreed to pay Defendant LP to perform adoption services in these contracts and were matched with referrals of infants and children that were promised to be held exclusively for each family.

**253.** At the time of contracting, Plaintiffs were informed by Defendant Fischer that each adoption should take approximately 4-6 months after the adoption paperwork was sent to Vietnam.

**254.** An implicit term of an agreement to perform adoptions is that the Defendant LP would coordinate and facilitate the adoptions.

**255.** Once Defendants received the Plaintiffs money, they required the Plaintiffs to send their own paperwork to Vietnam for completion and the Defendants stopped all further work on the adoptions.

**256.** Defendants breached that contract when they offered adoptions that they could not complete and fraudulently took the Plaintiffs money without refunding the funds and advising the Plaintiffs that the adoptions could not be completed.

**257.** Plaintiffs contracted with the Defendants to facilitate and complete an adoption in the Nam Dinh province of Vietnam.

**258.** Plaintiffs expected that the adoptions would be completed in 4-6 months and they

would bring their babies home.

**259.** As a direct result of the Defendants' conduct as hereinabove stated, the Plaintiffs were unable to complete their adoptions, and have been denied the opportunity to adopt the children they had grown to love.

**260.** Defendants have damaged the Plaintiffs by breaching the contracts with the Plaintiffs through allowing Directors, Officers or employees to offer fraudulent adoptions of orphans in Vietnam.

**261.** Plaintiffs' expectation damages for the breach of this contract are difficult to enumerate. They expected to become parents. As a result of Defendants' breach, they will never bring their children home from Vietnam.

   **WHEREFORE,** the Plaintiffs demand judgment against the Defendants in an amount in excess of $140,000.00 together with attorney's fees and costs of this action against Defendants.

## COUNT THREE
## INNOCENT MISREPRESENTATION

**262.** Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal assertions contained in the previous numbered paragraphs.

**263.** Of necessity, the following contains summary statements of the detailed allegations above. Plaintiffs will vigorously oppose a Rule 9(b) challenge based on the summary statements contained herein as they are all supported by prior detailed allegations.

**264.** Defendant Fischer represented to the Plaintiffs that they were able to complete adoptions in the Nam Dinh province of Viet Nam. Defendant Feinburg ratified and approved of her actions taken on LP's behalf. Fischer's representation proved to be false.

**265.** Defendant Fischer represented to Plaintiffs that LP was licensed to perform adoptions in Vietnam and Feinburg ratified this action as well.  This also proved to be false.

**266.** Plaintiffs would not have entered into contracts with the Defendant LP and Fischer if Defendant Fischer had not made these representations.

**267.** Even if Fischer's representations as to the licensing status were not made with scienter, they were still false.

**268.** As a result of the Defendant Fischer's inaccurate representations, the Plaintiffs have suffered substantial economic losses as a result of entering into the contract, and these losses benefited Defendants Little Pearls, Feinberg and Fischer.

**269.** As a direct and proximate result of Little Pearls, Feinberg and Fischer's innocent misrepresentations, Plaintiffs have incurred and/or will incur substantial damages in an amount in excess of $75,000 (seventy-five thousand) or an amount to be determined by the Court.

   **WHEREFORE,** the Plaintiffs demand judgment against the Defendants in an amount in excess of $140,000.00 together with attorney's fees and costs of this action against Defendants.

<u>COUNTS FOUR AND FIVE</u>
<u>WERE INTENTIONALLY LEFT BLANK SO AS TO MAINTAIN CONTINUITY</u>
<u>WITH THE PRIOR PLEADINGS IN THIS MATTER</u>


<u>COUNT SIX</u>
<u>RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT</u>
<u>18 U.S.C. §§ 1962(c)</u>
**(Feinberg and Fischer)**

**270.** Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal

assertions contained in the previous numbered paragraphs.

**271.** Of necessity, the following contains summary statements of the detailed allegations above. Plaintiffs will vigorously oppose a Rule 9(b) challenge based on the summary statements contained herein as they are all supported by prior detailed allegations.

**272.** At all relevant times, Little Pearls constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (c), in that it was a corporation.

**273.** Feinberg and Fischer are individual "persons" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962 (c), who associated with and/or participated in the conduct of said enterprise's affairs.

**274.** The previous allegations to the complaint have chronicled multiple fraudulent representations made to the Plaintiffs by the Defendants. Each of these false representations could constitute a violation of USC 1343 and, therefore, could constitute a *predicate act* as defined by the RICO act.

**275.** It is apparent from the allegations that these frequent violations constituted LP's regular way of doing business.

**276.** Defendants Fischer and Feinburg were both involved in the day to day operations of an organization that continually and as its normal way of doing business committed violations of the federal mail and wire fraud statutes.

**277.** Pursuant to the events described *infra,* the Defendants Feinberg and Fischer knowingly devised, created or knowingly participated in the schemes and artifices to defraud the Plaintiffs or to obtain the money and/or property of the Plaintiffs by means of false or fraudulent pretenses, representations or promises.

**278.** As a regular way of doing business, Defendant Little Pearls posted false

information on its website, claiming that the agency was licensed to perform adoptions in Vietnam, when it was not, and claiming that it was licensed to perform adoptions in Nam Dinh and Ha Vinh provinces, when it was not. Defendants are in the sole possession of the information as to which of them posted this mis-information online. Further, Defendant LP's employees would regularly state to prospective adoptive parents, in communications conducted via interstate wire soureces, that the agency was licensed to perform adoptive services in this country and these provinces, even though these assertions were false. Finally, LP employees would use lies of omission by failing to mention that the agency was not properly licensed to perform the services that it was contracting to perform.

**279.** Plaintiffs, and each of them, as the previous allegations chronicle in detail, relied upon these false assertions and lies of omissions as to the agency's licensing status in deciding to surrender tens of thousands of dollars to the agency to perform adoptive services which were impossible, given the lack of a license.

**280.** Further, Defendant Little Pearls regularly made false assertions as to the use of the funds that Plaintiffs were paying. Plaintiffs were charged "country fees" which Fischer claimed were to be used to pay expenses in Vietnam relevant to the adoption. Plaintiffs discovered, after paying these charges, that no fees were paid in Vietnam and Fischer and Feinburg had simply pocketed the cash. Plaintiffs were injured when they had to pay these fees again to a reputable agency or simply give up the adoption they were working on. Defendant Fischer made these assertions and Defendant Feinburg either ratified the decisions or was willfully ignorant as to what was going on in the organization in which he was a Director.

**281.** Further, Defendant LP regularly failed to apprise prospective adoptive parents as to adverse changes in the legal environment which made the likelihood of success on a Vietnamese adoption tenuous at best.   These lies of omission occurred when the information omitted was directly relevant to the decision to enter into adoptive services. Defendant Fischer, as detailed herein, failed to mention this key fact prior to contracting to perform services.  Defendant Feinburg was either aware of this activity on Fischer's part, or remained willfully ignorant as to what was going on in the organization in which he was a Director.

**282.** Because the false assertions as to Little Pearls' licensing status, the use of funds, and the lies of omissions as to the US Embassy's adoption warning were sent over the internet, and made over the telephone, the practice is in violation of USC § 1343.

**283.** It is indeterminate which employee of Little Pearls published the false statements on the website and discovery is necessary to determine that.  Defendant Fischer, as the previous allegations show, was responsible for the fraudulent communications and lies of omission to LP's clients.  Defendant Feinburg, as director of the agency, either knew or reasonably should have known, and was willfully ignorant, of these actions on Defendant Fischer's part.

**284.** As the previous paragraphs detail explicitly, Defendant Fischer was the party at Little Pearls who actually sent the emails to the various Plaintiffs with the false assertions and representations.

**285.** Defendant Feinburg, as a director of Little Pearls adoption agency, ratified and encourage the business practices of his co-director, Defendant Fischer.

**286.** Pursuant to the events described *infra*, the Defendants Feinberg and Fischer could

foresee that the mails and emails "would be used for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the schemes, within the meaning of U.S.C. §§ 1341 and 1343. In particular, the Defendants could foresee that the mails would be used to receive and/or deliver, *inter alia*, money and/or fraudulent representations regarding the adoption facilitators and the agreement among the parties; the status of ongoing adoptions, and the remedies for problems with the adoptions.

**287.** Defendants Feinburg and Fischer, acting singly and/or in concert, personally or through their agents, as co-conspirators, or aiders and abettors, used the mail and wires or caused the mail or wires to be used "for the purpose of"   advancing, furthering, executing, concealing, conducting, participating in or carrying out the schemes, within the meaning of U.S.C. §§ 1341 and 1343.

**288.** In advancing, furthering, executing, concealing, conducting, participating in or carrying out the schemes in or carrying out the schemes, the Defendants LP, Feinberg and/or Fischer specifically used the wires/mails or caused the wires/mails to be used to receive or deliver, *inter alia,* every email, facsimile, letter or telecommunication described *infra.*

**289.** In advancing, furthering, executing, concealing, conducting, participating in or carrying out the schemes in or carrying out the schemes, the Defendants LP, Feinberg and/or Fischer specifically used the wires/mails or caused the wires/mails to be used to receive or deliver, *inter alia,* every email, facsimile, letter or telecommunication with the Plaintiffs related to all adoption matters.

**290.** Each and every use of the wires or mails described with particularity above was

committed by the Defendants with the specific intent to defraud the Plaintiffs or for obtaining the money or property of the Plaintiffs by means of false or fraudulent pretenses, representations or promises.

**291.** Defendants' acts of mail and wire fraud are violations of 18 U.S.C. §§1341 & 1343 and constitute racketeering activity as defined by 18 U.S.C. §1961 (1)(B).

**292.**   All of the predicate acts described above were continuous so as to form patterns of racketeering activity, in that Feinberg and/or Fischer engaged in the predicate acts described over a substantial period of time.

**293.**  As a direct result of, and by reason of, the activities of Feinberg and/or Fischer, and their conduct in violation of 18 U.S.C. 1962 (c), Plaintiffs have been injured and damaged in their personal property within the meaning of 18 U.S.C. 1964 (c). Among other things, Plaintiffs have suffered damages to the extent they invested time and resources in pursuing what they thought and were led to believe was a legitimate adoption opportunity with Little Pearls Adoption Agency, to the extent its ability to complete adoptions and or facilitate Vietnamese adoptions was delayed by Feinberg and/or wrongful actions, and to the extent its property has been misappropriated.

   **WHEREFORE** Plaintiffs demand threefold the damages they sustained together with the cost of the suit, including reasonable attorneys' and experts' fees.


## COUNT SEVEN
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(d)

### (Feinberg, Fischer and Little Pearls)

**294.**  Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal assertions contained in the previous numbered paragraphs.

**295.**  Of necessity, the following contains summary statements of the detailed allegations above.  Plaintiffs will vigorously oppose a Rule 9(b) challenge based on the summary statements contained herein as they are all supported by prior detailed allegations.

**296.**  Feinberg conspired with Fischer to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity (as described in paragraphs 16-54) in violation of 18 U.S.C. § 1962(d).  In particular, Feinberg intended to further an endeavor of Fischer which, if completed, would satisfy all of the elements of a substantive RICO criminal offense and adopted the goal of furthering or facilitating the criminal endeavor.

**297.**  The details of Feinburg's involvement in the scheme are largely within the sole possession of the Defendants.  However, Plaintiffs have produced numerous emails wherein Defendant Fischer represented that she was going to "meet with Ric Feinburg" after the licensing scandal broke.  Plaintiffs allege, therefore, that Defendant Feinburg was involved in the operations of Defendant LP right along and, therefore, is a co-conspirator in the fraudulent enterprise.

**298.**  Fischer conspired with Feinberg to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity (as described in paragraphs 16-54) in violation of 18 U.S.C. § 1962(d). In particular, Fischer intended to further an endeavor of Feinberg which, if completed, would satisfy all of the elements of a substantive RICO criminal offense and adopted the goal of furthering or facilitating the criminal endeavor.

**299.**  As a direct and proximate result of, and by reason of, the activities of Feinberg, and/or Fischer and their conduct in violation of 18 U.S.C. §§ 1962(d), Plaintiffs have been injured

in their business or property, within the meaning of 18 U.S.C. § 1964(c).  Among other things, Plaintiffs have suffered damages to the extent they invested time and resources in pursing what they thought and were led to believe was a legitimate adoption opportunity with Little Pearls Adoption Agency, to the extent the ability to complete adoptions and or facilitate Vietnamese adoptions was delayed by Feinberg or Fischer's wrongful actions, and to the extent their property or money has been misappropriated.

**WHEREFORE** Plaintiffs demand threefold the damages they sustained together with the cost of the suit, including reasonable attorneys' and experts' fees.

<u>**COUNT EIGHT – NEGLIGENCE**</u>
<u>**ALL DEFENDANTS**</u>

**300.**  Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal assertions contained in the previous numbered paragraphs.

**301.**  Of necessity, the following contains summary statements of the detailed allegations above.  Plaintiffs will vigorously oppose a Rule 9(b) challenge based on the summary statements contained herein as they are all supported by prior detailed allegations.

**302.**  Defendant Fischer and Feinburg had a duty to perform the adoptions appropriately, correctly and in accordance with state and federal laws for their clients.

**303.**  Defendant Fischer and Feinburg breached that duty when they offered adoptions in provinces in Vietnam in which they were never licensed to perform adoptions.

**304.**  Defendant Fischer, as an adoption professional operating in Vietnam, knew or reasonably should have known about a major warning and pending major change in the adoption laws.

**305.**  Defendant Fischer, as an adoption professional operating in Vietnam, owed her

clients a duty to stay abreast of major changes in the adoption law.

**306.** Defendant Feinburg, as a Director of an adoption agency "specializing in Vietnamese adoptions," owed the clients of the agency a duty to monitor the actions and omissions of Defendant Fischer.

**307.** Such negligence as hereinabove stated has caused the Plaintiffs to have to undergo a series of extensive procedures trying to complete adoptions that were never to be completed.

**308.** Such negligence as hereinabove stated has caused the Plaintiffs to lose thousands of dollars in adoptive fees for adoptions which were impossible because the agency was unlicensed, and the adoptions were risky and impossible in light of the changes in the regulatory environment.

**309.** Defendants have damaged the Plaintiffs by their negligence in the operation of LP and through allowing Directors, Officers or employees to allow acts that prevented the Plaintiffs ability to adopt the children that they had loved.

**WHEREFORE,** the Plaintiffs demand judgment against the Defendants in an amount in excess of $140,000.00 and further demands an award of punitive damages together with attorney's fees and costs of this action against Defendants.

## COUNT NINE – CONTRACT NEGLIGENT MISREPRESENTATION - ALL DEFENDANTS

**310.** Plaintiffs repeat, re-allege, and incorporate by reference the factual matter and legal assertions contained in the previous numbered paragraphs.

**311.** Of necessity, the following contains summary statements of the detailed allegations above. Plaintiffs will vigorously oppose a Rule 9(b) challenge based on the summary

statements contained herein as they are all supported by prior detailed allegations.

**312.** Plaintiffs and Defendant LP, through the actions of Defendant Fischer ratified and approved by Defendant Feinburg, entered into contracts for adoptions to be performed in a professional method that is required to allow a parent to adopt internationally.

**313.** Plaintiffs were induced into using the services of Defendant LP and its employees by the advertisements, found on www.littlepearls.com, purporting that Defendant LP was a specialists in this area of adoptions.  Defendants are in the sole possession of who, precisely, ordered this information to appear on the website.

**314.** Plaintiffs were induced into using the services of Defendant LP and its employees by the false statements, found on www.littlepearls.com, purporting that Defendant LP was licensed to perform adoptions in Vietnam and the provinces of Nam Dinh and Vinh Ha.  Defendants are in the sole possession of who, precisely, ordered this information to appear on the website. Defendant Feinburg knew, or as Director of LP should have known that Fischer was making these statements.  Upon information and belief, he allowed and ratified these actions on her part.

**315.** Plaintiffs were induced into using the services of Defendant LP by the representations by Defendant Fischer, as detailed previously, that Defendant LP was licensed to perform adoptions in Vietnam, Nam Dinh, and Vinh Ha.  Defendant Feinburg knew, or as Director of LP should have known that Fischer was making these statements.  Upon information and belief, he allowed and ratified these actions on her part.

**316.** Plaintiffs were induced into using the services of Defendant LP by Defendant Fischer's failure to warn them of the foreign adoption warning which was published by

the US Embassy in Hanoi.

**317.** Plaintiffs were induced into using the Defendants' services through these advertisements and false statements.

**318.** Defendants knew or should have known that the adoptions would not be able to be completed without licensing in the Nam Dinh province. Defendants' advertising of the adoption services was incorrect, false and was negligently offered to the public.

**319.** Defendants have damaged the Plaintiffs by inducing them into using their services and by negligently allowing Directors, Officers or employees to allow the advertising of false information that harmed the Plaintiffs ability to adopt.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants from the Court as follows:

1. To award damages against the Defendants Feinberg, Fischer and Little Pearls, jointly and severally, for a sum of money equal to the amount of damages and/or losses the Plaintiffs have sustained or will sustain;

2. To treble the amount of said damages pursuant to 18 U.S.C. §1964(c);

3. To award prejudgment interest on the amount of damages and/or losses that Plaintiffs have sustained;

4. To award all costs of litigation incurred by Plaintiffs, including their reasonable attorney's fees, costs and expert's fees, pursuant to 18 U.S.C. §1964(c);

5. To award punitive damages in an amount in excess of $75,000 resulting from the Defendant's intentional and malicious actions;

6. To award such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

Dated: November 15, 2010          By: /s/  Joni M. Fixel

Joni M. Fixel (P56712)
Fixel Law Offices
Attorney for Plaintiffs