*Craig, et al v. Little Pearls Adoption Agency, Inc. et al.*
First Amended Complaint

# Exhibit A

# Embassy of the United States

ADOPTION CHILDREN IMMIGRANT VISAS

## Adopted Children Immigrant Visa Unit

- Update on Tu Du Hospital in Vietnam (August 2008)

- Vietnam Suspends Acceptance of New Adoption Dossiers (July 2008)

- Vietnam Adoptions – Fact Sheet (June 2008)

- USCIS Implements Required DNA Testing for Vietnamese Adoptions (Questions and Answers) (May 13, 2008)

- Summary of Irregularities in Adoptions in Vietnam (Tiếng Việt) (April 25, 2008)

- Warning Concerning Adoptions in Vietnam (April 2008)

- Warning Concerning Adoptions in Vietnam (January 2008)

- U.S. Embassy Warns Prospective Adoptive Parents Not to Travel to Vietnam Prior to Receiving Written Pre-Approval

- Assistant Secretary Maura Harty's Comments on Vietnam Adoptions (11/30 Interview on VTV) (November 2007)

- Announcement regarding Vietnam adoptions (November 2007)

- DIA Announcement regarding Phu Tho province (November 2007)

# Embassy of the United States

ADOPTION NEWS ARCHIVE

## Adoptions Statement November 2007

In recent months, US Embassy Hanoi and United States Citizenship and Immigration Services (USCIS) Ho Chi Minh City have seen an increase in the number of irregularities appearing in orphan petitions and visa applications in Vietnam. This has resulted in a similar increase in the issuance of Notices of Intent to Deny.

The ongoing number of irregularities that we are currently seeing strongly indicates that the adoption process in Vietnam still lacks sufficient oversight and regulation. Specifically there is insufficient control of the so-called child finders and an inadequate regulation of the fees paid to individuals and institutions. Despite its stated intention to do so, Vietnam has yet to publish a schedule of fees. We are extremely concerned by reports of significant increases in the number of abandoned children since 2005, especially in the provinces of Phu Tho and Thai Nguyen.

We recognize that a decision to deny a petition is an extremely undesirable outcome for adopting parents and for children, who themselves may be the victims of unscrupulous agents. For this reason, we urge adoptive parents to be extremely diligent in reviewing qualifications and standards before selecting an adoption service provider. Unfortunately, as news stories and blogs often reveal, the glowing report of an adoptive parent who successfully "brought home" a child cannot be taken as evidence that the adoption was ethical or fully legal.

We at the Embassy have a legal responsibility to ensure the integrity of the adoption process when that process is part of the request for an immigrant visa. Moreover, we have an ethical responsibility to ensure that international adoptions include adequate safeguards for the rights of the children, birth parents, and adoptive parents throughout this process.

The Memorandum of Understanding (MOU) on Intercountry adoptions signed by the U.S. and Vietnam in 2005 was the beginning of a step towards an intercountry adoption program that would meet international standards such as those established by the Hague Convention on Intercountry Adoptions. That convention contains a number or protections and safeguards currently lacking in Vietnam. For that reason, we are urging the Government of Vietnam to push forward with its efforts to become a Hague partner.

The MOU was designed to increase transparency and reduce corruption, and came after a period when adoptions had been suspended in Vietnam because of significant problems involving corruption and "Baby buying."

We continue to encourage the DIA to work with provincial authorities in Vietnam to improve the integrity of the adoption system. We recognize there may be legitimate questions concerning the

DIA authority in these cases. Whatever the cause, to date we have seen little remedial action to address the problems. Even more important, we have seen little if any action to identify and prosecute those responsible for fraudulently documenting the abandonment of children, offering monetary inducements to families for relinquishing children, and offering children for international adoption without the consent of the birth parents.

We strongly endorse international adoption as an important option for Vietnamese children who do not have permanent families. We are deeply concerned, however, by confirmed cases of child selling, and by evidence that children are being released for adoption without the consent of the birth parents.

We are continuing to work with the Government of Vietnam to find ways to strengthen and improve accountability in the adoption system. We continue to urge Vietnam to pass a new, responsible, comprehensive law regulating adoptions, one that puts in place a process that protects the interests of all parties involved in and adoption and one that meets the standards of the Hague Convention. We look forward to the day when both of our countries are full participants in that convention.

# Embassy of the United States

Visas

Non-Immigrant Visas

**Adopted Children
Immigrant Visa**

  Adoption
  Procedures

  Filing Your I-600

  Applying for an
  Immigrant Visa

  Forms and
  Information
  Sheets

  Contact Us

Immigrant Visas

Aliens Ineligible to
Receive Visas

Visa Free Travel

Other Useful Links

ADOPTION NEWS ARCHIVE

## Summary of Irregularities in Adoptions in Vietnam (04/25/2008)

On October 25, 2007 in response to "growing concerns about irregularities in the methods used to identify children for adoption in Vietnam and the resulting difficulties in classifying those children as orphans," USCIS required that I-600 petitions be filed in Ho Chi Minh City, with the processing of these petitions to be completed before prospective adoptive parents travel to Vietnam. These procedures enable USCIS to determine whether a child qualifies as an orphan, as defined by the Immigration and Nationality Act. In the six months since this program was instituted, US officials in Vietnam have investigated over 300 I-600 petitions. This report presents a summary of our findings.

Country Fraud Profile

Vietnam is considered to be a high risk country for immigration fraud according to the Department of State. Fraudulent documents are routinely submitted by Vietnamese applicants in both non-immigrant and immigrant visa applications. These include both documents that have been fabricated outright and official documents issued improperly or based on incorrect information. Birth certificates, household registry documents, and marriage certificates can easily be purchased from corrupt local government officials or brokers. Marriage fraud, in order to obtain immigration benefits, is common and has resulted in multiple arrests in the United States.

Adoption Legislation and Administrative Structure

Intercountry adoption in Vietnam is regulated by two decrees: Decree 68/2002 and Decree 69/2006. These decrees divide responsibility for adoption between the Department of International Adoption (DIA) in the Ministry of Justice, and the Ministry of Labor, Invalids and Social Affairs (MOLISA) at the national level. Most of the actual administration of adoptions, however, is handled at the provincial or district level, with minimal oversight from DIA or MOLISA. For example, the matching of children and adoptive parents is the responsibility of the district-level Department of Labor, Invalids and Social Affairs. In many cases this authority is delegated to the orphanage director. If DIA feels that a child is not eligible for intercountry adoption, they can request the office that made the match review the file, but they cannot block the match or prevent the completion of a full and final adoption.

The definition of an adoptable orphan is provided in Decree 68/2002 Article 44, which states that a child cannot be released for adoption without "the written voluntary agreement of the father and/or mother of that child." The decree lists only three exceptions to this rule. The first is if both parents are deceased; the second is if the child "has been abandoned or left at a medical establishment;" and the third is if "the child's parents have lost their civil act capacity" [sic]. Decree 69/2006 clarifies that the orphanage or People's Committee must prove that a child is covered by one of these exceptions. Otherwise, a child is still considered to be under his parents' custody, whose consent is required prior to any adoption being authorized. Decree 68/2002 and Decree 69/2006 also establish that in the case of a child who has been abandoned or left at a medical facility, a 30 day search

must be made for the birth parents, and in all cases a separate 30 day search must be made for domestic adoptive parents. These searches are conducted by the orphanage or local People's Committee.

Financial links between ASPs and Orphanages

Vietnamese law requires that an Adoption Service Provider (ASP) sign a donation agreement with an orphanage before the ASP can arrange adoptions from the orphanage. These agreements are generally not released to the public. Several orphanage directors have told the Embassy that they actively bargain with multiple ASPs, and choose to work with the ASP that offers the highest donation per child referred. While these donations can be a mechanism to assist in the care of the children at the orphanage, they can also have a distorting effect on the adoption system.

Orphanage directors in four provinces have reported to the Embassy that there is a strong financial incentive to maximize the number of children available for foreign adoption in their centers. The donation provided per child (available for intercountry adoption) can be up to 10 times the standard government funding. Hospital and social workers have reported that orphanage directors offer them financial incentives for each child sent to their orphanage.

As a result of the autonomy given to orphanage directors by MOLISA, individual orphanage directors, in conjunction with representatives of their sponsoring ASP, have broad latitude in determining how donations will be made, what the amount will be, and whether applications from prospective domestic adoptive parents will be processed. For example, one orphanage, which is entirely funded by an American ASP, submits expense reports and receipts to the ASP on a monthly basis. The ASP then transfers funds to reimburse the orphanage for its expenses. The number of infants in this orphanage has remained steady for the past three years. The orphanage is clean, well stocked with medicine and has an RN on duty. This orphanage prioritizes reuniting children with their biological parents, and processes equal numbers of domestic and intercountry adoptions. By contrast, another orphanage receives a fixed monthly donation for each child in the orphanage who is available for international adoption and the payment is made in cash directly to the orphanage director. This orphanage has seen the number of infants in its care increase by over 2000% in the past year, but it has not made significant increases in staff and does not have an RN.

According to DIA, orphanages are required to refer one child for foreign adoption for every x dollars donated by the ASP. Thus, if the ASP funds a $10,000 project and the per-child donation is set at $1000 per child, then the orphanage would be required to refer 10 children for intercountry adoption to the ASP. Should the orphanage not have 10 children who are qualified for intercountry adoption, then, according to DIA, the orphanage director is required to find the additional children to complete his side of the agreement. Two orphanage directors have confirmed to consular officers that they are feeling pressure to find more children for their orphanage to "compensate" ASPs for their donations.

Another effect of the donation system is that it can reduce the protections that Vietnamese law grants to birth parents, such as the required 30 day search for birth parents and/or domestic adoptive parents as described above. Since, in most cases, the ASP has a close relationship with the orphanage, the ASP representative may be informed as soon as a potentially adoptable child enters the orphanage. This can result in the issuance of a "soft referral," where adopting parents are notified that they have been matched with a child before the completion of the two consecutive 30 day search periods. The DIA has stated that such pre-referrals are illegal. Nonetheless, in over 40 documented cases, DIA has taken no action to punish or prevent the issuance of soft referrals, noting that all they can do is to inform provincial or district officials of the law and request their compliance.

Local officials throughout Vietnam have reported that they have never received any calls in response to ads run seeking the birth parents of a deserted child. In fact, officials at the Ministry of Justice acknowledge that such advertisements are ineffective as many families in these provinces have no access to TV or radio and are often illiterate. Vietnamese social workers also note that if a child is abandoned, the birth family is most likely to reclaim the child 3-6 months after the abandonment. However, the ads are run only one week after the abandonment, further decreasing their effectiveness. Further, provincial officials have stated that the advertisements are made in a manner that significantly decreases the likelihood that they will be heard or seen by the birth families. Investigations by the Embassy have also confirmed that the ads are not effective. In 6 cases where investigations by the Embassy have located the birth family of allegedly deserted children, the birth families said that they never heard or saw any ads seeking the birth parents of the child.

Orphanage directors in two provinces have confirmed to the Embassy that while they receive applications from families interested in domestic adoption, they do not process these applications. They have said that the reason these applications are not processed is that their orphanage will receive a donation from an ASP if the baby is adopted internationally, but not if the child is adopted domestically. One orphanage director stated that he would need "permission" from the ASP funding his orphanage in order to release a child for domestic adoption, noting that the monthly support payments the ASP made for the children gave the ASP the "authority" to decide the child's future.

Types of Adoption Cases

Under US Immigration law, children can be adopted if they are orphans due to the whereabouts of their birth parents being unknown (desertion) or if one or both birth parents have permanently relinquished custody of their child to the orphanage, (termed "abandonment" by US Immigration law, but commonly referred to as relinquishment). Prior to the suspension of adoption in 2002, 80% of cases were relinquishments, and 20% were abandonments. Since the Memorandum of Agreement (MOA) went into effect in 2005, those figures have flipped with over 85% of the cases involving desertions. Orphanages not involved in intercountry adoption, however, have reported to the Embassy that they have not seen any increase in the number of deserted children, and the vast majority of children in these facilities are children in care . Post has received multiple, credible reports from orphanage officials that facilitators are deliberately staging fraudulent desertions to conceal the identity of the birth parents.

Relinquishments

Cases where one or both birth parents have permanently relinquished their child to an orphanage account for 15% of cases filed under the Orphan First program. 75% of birth parents who were interviewed by a consular officer stated that in addition to payments for food, medical care and administrative expenses, they received payment from the orphanage in exchange for placing their child in the orphanage. On average this payment was six million Vietnamese Dong, which is the equivalent of 11 months salary at minimum wage in Vietnam. Many of these families cited these payments as the primary reason for placing their child in an orphanage. The majority of these parents also state that they had not considered placing their child in an orphanage until a health care worker or orphanage official suggested to them that they should do so and informed them that they would receive a payment for doing so. Many of these parents also report that orphanage officials told them that the child will visit home frequently, will return home after they reach a certain age (often 11 or 12), or will send remittance payments from the United States. In these cases, the majority of birth parents have said they do not consent to the adoption if any of these conditions are not kept.

The Ministry of Labor, Invalids and Social Affairs (MOLISA) has stated that the payments to birth parents described above are unauthorized and not funded by government sources. The Ministry of Justice has likewise confirmed that such payments are illegal under Vietnamese law. MOLISA has stated, however, that there are absolutely no regulations on how orphanage directors can spend the money given to them by ASPs and that orphanage directors can give this money to anyone they wish, as long as the recipient did not have to take any action, such as relinquishing a child, in order to receive the donation. Accordingly, while MOLISA can confirm that the reported payments from orphanage officials to biological parents must have come from ASP funds, they do not have the ability to take action or to investigate reports of child buying.

Desertions

Throughout Vietnam, officials at orphanages connected with intercountry adoptions report a sharp increase in the number of deserted children has since 2005, the year that the adoption agreement with the United States was signed. Orphanages in 7 provinces report a 17 fold or greater increase in desertions. Officials at orphanages not connected with intercountry adoption, however, have not seen an increase in desertions. A statistical review of child desertions reveals a series of facilities that have an unexplained high rate of child desertions.

Provincial records also document an unusual pattern of "desertion pockets." For example, in one province in 2007 there were 77 cases of child desertion. Of these, 76 occurred at one particular orphanage. The director of this orphanage told the Embassy that before he signed an agreement with an ASP, the orphanage was home to 10 children, most of whom had been relinquished. By January 2007, the orphanage was home to 23 children, of whom fifty percent had been deserted. By January 2008, the orphanage was home to 70 infants, with over 90% of them having been deserted. The orphanage director attributed the growth in the number of children and the number of desertions to the fact that the orphanage was receiving funds from the American ASP. He also stated that the orphanage had hired contract employees to find children between zero and six years of age whose families were in a particularly difficult situation and encourage the families to put their children in the orphanage. The orphanage guards also confirmed that desertions were extremely rare before 2006, but now they "find" five infants per month on average.

In other cases, individuals report finding children in a field or by the side of the road. Often the individual who purportedly found the child (child finder) is a police officer, a village official or a member of their immediate family. These individuals are often related to the orphanage director or the local official who approves adoptions. Embassy investigations have shown that many of these reports are fraudulent. These include cases in which those individuals, who only months or weeks before had signed statements claiming to have found a deserted child, told consular officers that they had never in their lives found a deserted child. In one case, the child finder could not remember finding a child, even though the purported event had happened the day before. In another case, the child finder stated that the police told her if she did not sign a fraudulent statement claiming that she had found a child in 2007, they would arrest her for kidnapping in connection with a child finder statement that she signed in 2006.

In over 10 cases, Embassy investigations have discovered the identity of the birth mother in cases where a child was purportedly deserted. In all of these cases, the birth mother was known to orphanage or hospital officials, but these institutions fraudulently document the case as a desertion. In some cases, this was to conceal payments to the birth family. In others, children were declared to be deserted with unknown parents after the birth parents failed to pay outstanding hospital bills.

In one of these cases, the official Vietnamese documentation showed the child was born at Hospital X and then the birth mother left the hospital and was untraceable. An Embassy investigation showed that the child was born by C-section at a different hospital. The child was pre-mature and had significant respiratory problems and thus was transferred to Hospital X. Based on information from the hospital director, the Embassy located and interviewed the birth mother, who stated that she had visited her son at the hospital several times, but that the hospital director would not let her hold the child until she paid a 12 million Vietnam Dong hospital bill. She stated that she applied to have the bill reduced due to her low income, but the director refused to consider the application. Additionally, she stated that she had been told that her child would require lifelong treatment for water on the brain and that, as a result, her son had been transferred to Orphanage Y for care. She was shocked to hear that the medical report from the U.S. panel physician stated that the child was healthy. After considerable pressure from the U.S. Mission, this adoption was canceled and the child is now back with his birth parents.

Unlicensed Facilities

In five provinces, the Embassy has discovered unlicensed, unregulated facilities that provide free room and board to pregnant women in return for their commitment to relinquish their children upon birth. None of these facilities openly advertises its services. Women learn of the facilities existence solely by word of mouth. While the facilities are open and the women are free to come and go as they please, they incur a debt for each night that they stay that they have to pay if they do not relinquish their child. Recent Vietnamese media reports of such facilities have revealed that women often live in squalor and in many cases are forced to labor during their stay. In several of these facilities, there is a policy that the birth mother cannot see her child after delivery, in order to

prevent bonding. Women in these facilities report receiving up to 6 million Vietnam Dong as payment for their children. While the source of funding for these facilities is unclear, they appear to have close connections with nearby orphanages.

When the Embassy visited these facilities, we saw up to 20 women living in a single home. These women reported that orphanage officials came to the house in order to have them sign paperwork relinquishing their children. The women would then receive the promised payments. Often, the child is then taken to a nearby hospital or orphanage where a second set of paperwork is produced stating that the child was deserted. This is the paperwork that is submitted to the DIA and to the Embassy to support the claim that the child is an orphan.

Vietnamese Documents - Issuance Procedures

Documents relating to adoptions in Vietnam, such as birth certificates, abandonment reports, relinquishment agreements, and investigative reports are generally issued by orphanage directors, local People's Committees, Provincial Departments and the Department for International Adoptions (DIA). The facts asserted in these documents are not verified by the issuing officials. Attempts by U.S. officials to verify the accuracy of these documents have routinely uncovered evidence of fraudulent or inaccurate information. Therefore, all documents issued by the authorities listed above and any other documents containing information not verified by the issuing authority cannot be considered adequate evidence of the facts claimed and, at best, may be used in conjunction with primary and contemporaneous secondary evidence or must be must be independently verified by U.S. officials in Vietnam before they can be considered valid for immigration purposes.

In cases involving the desertion of a child, local officials usually issue birth certificates and reports of abandonment at the request of orphanage or hospital officials without speaking to the individuals involved. For example, the People's Committee in one southern province told the Embassy that they issue whatever documents a local midwife requests without verifying the accuracy of the statements. This is done to "help her with her business with the orphanage." In a different province, village officials issued an official statement that a birth mother was single, even though their own registry book showed she was married and had four children. Further, MOLISA has confirmed that for deserted children a birth certificate can be issued showing the date and time of desertion as the date and time of birth and listing the birth parents as unknown, even if the true facts have been previously recorded in official documents.

The Embassy has received credible reports that some ASPs pay $10,000 per referred child to local facilitators. According to one of these facilitators, a significant portion of this money goes to the orphanage director, who is responsible for finding children. The facilitator and orphanage director then work together to create a false advertisement claiming that the child was abandoned, regardless of the child's true origins. This ad is then used to obtain the necessary paperwork from local officials and DIA. The facilitator noted that as long as the right fee is paid, no one tries to verify the facts of the case, and the documents are issued with no questions asked.

Fraudulent police reports have also been submitted to the Embassy in connection with adoption cases. For example, in one adoption case the original file stated that the birth mother was unknown. However, hospital records revealed the mother's name and address. When the Embassy requested an explanation as to why DIA approved the adoption case without a police search for the biological mother as required by Vietnamese law, DIA blamed the omission of the birthmother search report on the village police and provided a document dated March 21, 2007, stating that a police check had been done and they could not find the birth mother. However, the police officer who purportedly did the check stated he had not actually done a physical search, and that the date on the document was inaccurate. He stated that "about 20 days ago" the police chief in another village visited his office with a prepared backdated report about the search and asked him to sign, which he did.

Vietnamese Documents - Verification Procedures

Once a child has been matched with a prospective adoptive parent, the provincial level Department of Justice conducts a review of the file to ensure that it contains the proper documents required by Vietnamese law. According to provincial Department of Justice officials, the review consists of physically verifying that the child is in the orphanage and verifying that each required document is signed, sealed and in the file. There is no requirement to verify the accuracy of the information contained in the file. Further, there is no requirement to verify that a birth parent intended to relinquish their child or to verify the circumstances of a child's desertion. According to DIA, even if this review were to uncover any discrepancies, DIA and provincial Department of Justice officials are prohibited from conducting an independent review of the facts or speaking directly with the witnesses in the case. Instead, they are required by Article 45 of Decree 68/2002 to return the case to the official who prepared the original report. If this individual recertifies that his original report is correct, then the case is allowed to proceed.

DIA's explicit position is that, as long as the appropriate papers have been signed by the correct officials, DIA will certify that the adoption complies with Vietnamese law. DIA has stated that it does not actually have the authority to declare an adoption illegal, revoke a Giving and Receiving Ceremony, or cancel a referral. The lack of verification and accountability regulations in Vietnamese adoption law creates a situation where an unscrupulous orphanage director or local official who fabricates a "desertion" or "relinquishment" is also only that official who can investigate the alleged fraud in the case.

A provincial Department of Justice official told the Embassy of cases where under Vietnamese law children had been matched with adopting families and the cases were referred to her office for verification. In one case, hospital records stated that the birth mother had registered at the hospital under an assumed name and then died shortly after the birth. The child was listed as deserted. However, the DOJ official found a reference in the hospital file that the woman's family had come to the hospital to claim her body. As a result the official contacted the family, who stated that the hospital had transferred the child to the orphanage without their consent and that the orphanage had denied them visitation rights. The family has now been reunited with the child, who is being raised by his maternal grandparents. However, the official noted that under Vietnamese law no one had technically

done anything wrong in separating this child from his family. Only her personal interest in the case and her ability to persuade other local officials to do the right thing prevented this child from being permanently separated from his family.

Reports of Corruption in Adoption System

The Embassy has received credible reports from current and former employees of ASPs working in Vietnam regarding corruption in the adoption system, beginning with the licensing procedures. Several ASPs have reported that they were told they had to fund tours to the United States for DIA and other government officials in order to receive their licenses. According to ASP employees, these tours included shopping sprees, where ASP employees were expected to pay for all of the purchases of the Vietnamese delegation. Others have reported being asked to pay bribes in order to obtain provincial licenses.

In addition, statements from adopting parents and ASP employees show that many ASPs ask adopting parents to pay cash donations to orphanage directors and staff. These payments are illegal according to the Vietnamese Ministry of Justice, but the Ministry acknowledges that they are widespread and that they are a key factor in the irregularities seen in the adoption system in Vietnam. Further, ASPs have reported that cash and in-kind donations have been diverted by orphanage officials and used to finance personal property, private cars, jewelry and, in one case, a commercial real estate development

Official Response to Reports of Irregularities

DIA has acknowledged that when it receives reports from the Embassy regarding fraud in adoption cases, they meet with the ASP or local facilitators to develop a strategy to refute the Embassy's evidence. Frequently this consists of a second investigation where child-finders are notified in advance that they will be re-interviewed in front of the People's Committee. When they arrive they are reminded that they can be punished for having previously made false statements to the People' Committee. In other cases, birth mothers from rural provinces who had told the Embassy they did not agree to relinquish their children were summoned to Hanoi at their own expense and ordered to appear before DIA to sign new relinquishment papers. Under this pressure, child-finders and birth mothers have recanted the statements they had made to consular officials.

The Embassy has informed the DIA of cases of potential fraud and illegal activity. However, the DIA has acknowledged that it has not taken any action, criminal or administrative, against any individual or organization for any violation of Vietnamese law or regulation concerning adoption. They have also stated that they have taken no action to address concerns or allegations of wrongdoing submitted to them by individuals, ASPs or the U.S. Embassy. Instead, DIA has stated that it is in the "humanitarian" interest of the Government of Vietnam to ensure that every proposed adoption is completed as quickly as possible. They note that the ASPs have made a donation for the child, and thus, even if they had the authority to revoke a referral or an adoption, they would not do so because they could not break their contract with the ASP.

This site is managed by the U.S. Department of State. External links to other Internet sites should not be construed as an endorsement of the views or privacy policies contained therein.

# Embassy of the United States

Visas

Non-Immigrant Visas

**Adopted Children
Immigrant Visa**

  Adoption
  Procedures

  Filing Your I-600

  Applying for an
  Immigrant Visa

  Forms and
  Information
  Sheets

  Contact Us

Immigrant Visas

Aliens Ineligible to
Receive Visas

Visa Free Travel

Other Useful Links

ADOPTION NEWS ARCHIVE

## Warning Concerning Adoptions in Vietnam

The Department of State warns potential adoptive parents and adoption service providers of the risk of initiating new adoptions from Vietnam at this time. The 2005 Memorandum of Agreement, required by Vietnamese law to authorize adoptions between the United States and Vietnam, expires on September 1, 2008. The United States is strongly committed to continuing intercountry adoptions from Vietnam if possible. Our primary concern is to ensure that the children and families involved in the adoption process are protected from exploitation. The Government of Vietnam shares this concern. Both countries acknowledge that more needs to be done.

Discussions about revision and renewal of the Agreement are a priority for both governments, but there is no certainty a new Agreement will be in place on September 1. In view of the processing time required in Vietnam from placement to the Giving and Receiving Ceremony, an adoption process begun now cannot be completed before the current Agreement expires. We do not know whether the Government of Vietnam will continue to process pending cases if the current Agreement expires before a new Agreement takes effect. Moreover, given concerns about the existing level of protection for children in Vietnam, it is unlikely that the Agreement can be renewed in its current form.

The United States Government stands ready to support Vietnam's efforts to strengthen and improve accountability in its adoption system and to develop its capacity to regulate adoptions. In some cases, our background investigations have revealed evidence of irregularities, ranging from forged or altered documentation to cases where children have been offered for adoption without the apparent knowledge or consent of their birth parents.

In response to these problems, in November 2007, the U.S. Citizenship and Immigration Service and the Department of State instituted new procedures to verify that children identified for placement meet the requirements of Vietnamese and U.S. law, before the child has been adopted under Vietnamese law. The Embassy strongly advises prospective adoptive parents not to travel to Vietnam until they have received notification from the Embassy that their case is ready for final processing and travel is appropriate. Parents should contact the Embassy immediately if anyone, including their adoption service provider, encourages them to travel to Vietnam prior to receiving this notification. The Embassy can work together with adoption service providers, Vietnam's Department of International Adoptions, and local authorities to resolve issues such as the scheduling of a Giving and Receiving Ceremony.

We continue to urge Vietnam to comply with the terms of the 2005 Agreement and to establish a process that protects the interests of all parties involved in adoptions.

## VIETNAM INTERCOUNTRY ADOPTION CONCERNS

Q: What are the problems with the present Agreement that warrant a renegotiation of the MOU between the two countries at this point in time?

- GVN has not complied with specific terms of our 2005 bilateral Agreement on adoptions which both parties agreed were essential to a process that is transparent and protects the rights of infants and families.

Q: Does the USG want to end all intercountry adoptions from Vietnam?

- The USG does not want to end adoptions from Vietnam.
- Instead, we hope that this renegotiation process will result in concrete steps towards establishing a more transparent adoption process with the safeguards necessary to protect children, birth parents, and adoptive parents.
- Field investigations by USG personnel have revealed evidence of fraud which undermine the reliability of the adoption process in Vietnam.
- This evidence requires us to scrutinize individual cases carefully to verify whether the children involved are actually eligible for adoption under Vietnamese and U.S. law.

Q: Why is the U.S. Government issuing this warning?

- Vietnamese law, not U.S. law, requires a Memorandum of Agreement.  The current Agreement expires on September 1.
- We hope that a new Agreement can be finalized before that date.
- We cannot predict, however, whether this will be the case and want prospective parents to be aware of that risk.

Q: What steps has the USG undertaken to address concerns about fraud and baby-selling while it is negotiating a new MOA with the Vietnamese government?

- The USG has instituted the Orphan First program, under which the USG conducts field investigations to verify the child is eligible for a U.S. visa before the adoption is finalized in Vietnam.
- Orphan First allows us to address questions of fraud before the adoption is finalized and spare American parents the pain of learning that an adopted child is not eligible for an immigrant visa.

Q: What is the USG doing about the families whose cases have been issued Notices of Intent to Deny (NOIDs)?

- The USG is doing everything in its power to complete these cases quickly.
- We know that the period of review of adoption cases is difficult for families, but the U.S. government has a responsibility to ensure that any irregularities in these orphan adoption cases do not undermine the validity of the petition or visa application.

Q: What is the current status of the NOIDs?

- Specific questions about NOIDs should be addressed to USCIS, which has responsibility for this process.
- Further, out of respect for the privacy of individual families, we cannot discuss individual cases.

Q: What is the USG's goal regarding intercountry adoptions from Vietnam?

- Our goal for Vietnam and for all countires is an intercountry adoption process solidly based on the standards set by the Hague Adoption Convention.
- We have strongly urged the GVN to accede to the Hague Convention on Intercountry Adoption, to promptly draft Hague compliant adoption legislation and implementing regulations, and to develop a child welfare infrastructure that will bring Vietnam into conformity with Hague Standards.

This site is managed by the U.S. Department of State. External links to other Internet sites should not be construed as an endorsement of the views or privacy policies contained therein.

## Embassy of the United States

Visas

Non-Immigrant Visas

**Adopted Children
Immigrant Visa**

   Adoption
   Procedures

   Filing Your I-600

   Applying for an
   Immigrant Visa

   Forms and
   Information
   Sheets

   Contact Us

Immigrant Visas

Aliens Ineligible to
Receive Visas

Visa Free Travel

Other Useful Links

ADOPTION NEWS ARCHIVE

### April 2008 - Warning Concerning Adoptions in Vietnam

April 2008

The Department of State continues to urge prospective adoptive parents and adoption service providers not to initiate new adoptions from Vietnam at this time. The 2005 Memorandum of Agreement, required by Vietnamese law to authorize adoptions between the United States and Vietnam, expires on September 1, 2008. In addition, recent field investigations have revealed incidents of serious adoption irregularities, including forged or altered documentation, mothers paid, coerced or tricked into releasing their children, and children offered for adoption without the knowledge or consent of their birth parents.

The United States is strongly committed to processing legitimate intercountry adoptions from Vietnam if possible. Our primary concern is to ensure that the children and families involved in the adoption process are protected from exploitation. The Government of Vietnam shares this concern. Both countries acknowledge that more needs to be done to address deficiencies in the current system.

On April 25, the Government of Vietnam announced that it will allow adoption to be completed in cases where prospective adoptive parents have been matched with a child and received an official referral prior to September 1, 2008. It further stated that in accordance with Vietnamese law, the DIA will suspend the acceptance of new dossiers on July 1, 2008. On September 1, 2008 any dossier that has not received a referral will be closed and returned to the Adoption Service Provider. An adoption process begun now cannot be completed before the current Agreement expires. Please note that this does not mean that adopting parents must have completed a Giving and Receiving Ceremony prior to September 1, 2008; by this date, as explained above, parents must have had their dossier approved by DIA and have received a referral for a child.

Prospective adoptive parents should be aware that documents relating to adoptions in Vietnam, such as birth certificates, abandonment reports, relinquishment agreements, and investigative reports are generally issued by orphanage directors, local People's Committees, Provincial Departments and the Department for International Adoptions (DIA). The facts asserted in these documents are not verified by the issuing officials. Attempts by U.S. officials to verify the accuracy of these documents have routinely uncovered evidence of fraudulent or inaccurate information. Therefore, documents issued by the authorities listed above, and any other documents containing information not verified by the issuing authority, cannot be considered adequate evidence of the facts claimed. They may be used in conjunction with primary and contemporaneous secondary evidence, or must be independently verified by U.S. officials in Vietnam, before they can be considered valid for immigration purposes. (http://travel.state.gov/visa/frvi/reciprocity/reciprocity_3705.html)

Consular officers have routinely completed field verifications of orphan status in over 35 provinces in Vietnam. However, in some cases, Vietnamese officials have prevented the U.S. Government from conducting independent field inquiries into the status of children identified in I-600 petitions. Embassy outreach, as well as support from adoption agency officials, have thus far allowed independent investigations to resume in some areas that were previously impeded. We continue robust efforts to resolve this issue. Unfortunately, it is impossible to predict when we can complete the field inquiries in areas which are still closed to our staff.

The U.S. Citizenship and Immigration Service and the Department of State have instituted procedures to verify that children identified for placement meet the requirements of Vietnamese and U.S. law, before the child has been adopted under Vietnamese law. Information about these procedures is available from USCIS or through their website http://www.uscis.gov/portal/site/uscis. The Embassy strongly advises prospective adoptive parents not to travel to Vietnam until they have received notification from the Embassy that their case is ready for final processing and travel is appropriate. Parents should contact the Embassy immediately if anyone, including their adoption service provider, encourages them to travel to Vietnam prior to receiving this notification. The Embassy can work together with adoption service providers, Vietnam's Department of International Adoptions, and local authorities to resolve issues such as the scheduling of a Giving and Receiving Ceremony.

This site is managed by the U.S. Department of State. External links to other Internet sites should not be construed as an endorsement of the views or privacy policies contained therein.



# Vietnam to end adoption program with USA

Updated 4/30/2008 2:13 PM

HANOI (AP) — Vietnam, where growing numbers of Americans have turned to adopt a baby, announced Monday it would stop processing new adoption applications from U.S. citizens from July following allegations of baby-selling, corruption and fraud.

The abrupt cutoff cast a cloud of uncertainty over pending adoptions in the Southeast Asian country, which have surged in the face of tightened restrictions in China, Guatemala and elsewhere.

**ON THE WEB:** Adoption bulletin from U.S. Embassy in Hanoi

The announcement came days after The Associated Press published details of a U.S. Embassy report that outlined rampant abuses, including hospitals selling infants whose mothers could not pay their bills, brokers scouring villages for babies and a grandmother who gave away her grandchild without telling the child's mother.

"It is tragic for children that the U.S. government has not been able to find ways to work with the Vietnamese government to prevent adoption abuses while at the same time processing legitimate adoptions," said Tom Atwood, president of the Washington-based National Council for Adoption, a research and advocacy organization.

"Many hundreds, perhaps thousands, of children will not have families as a result of this failure of leadership."

U.S. adoptions have boomed in Vietnam, with Americans — including actress Angelina Jolie — adopting more than 1,200 Vietnamese children over the 18 months ending in March. In 2007, adoptions quadrupled from a year earlier.

In its nine-page report, the U.S. Embassy said some American adoption agencies paid orphanage officials as much as $10,000 per referral, while others took them on shopping sprees and junkets to

the United States in return for a flow of babies.

It said questions arose after routine investigations turned up widespread inconsistencies in adoption paperwork. There was also a suspicious surge in the number of babies listed as abandoned, making it impossible to confirm the children were genuine orphans or that their parents had knowingly put them up for adoption, as required by U.S. law.

Vu Duc Long, director of Vietnam's International Adoption Agency, called the U.S. allegations "groundless." On Monday, he said Vietnam was scrapping a bilateral agreement with the United States that sought to regulate the adoption system.

"They (the Americans) can say whatever they want, but we are not going to renew it," Long said.

In a letter to the U.S. Embassy in Hanoi, Vietnam said it would stop taking adoption applications from American families after July 1. Adoption arrangements with other countries were unaffected.

The State Department said Vietnam's government would allow adoptions to be completed in pending cases where prospective parents had been matched with a child and received an official referral before Sept. 1.

After that date, it said any dossier that had not received a referral will be closed and returned to the adoption agency. It said given the time it takes to process a claim, any adoption initiated now would be unsuccessful.

The U.S. Embassy said it respected Hanoi's decision,

Advertisement



Print Powered By  FormatDynamics



but was confident of the accuracy of the report.

"The government of Vietnam has made their own decision, but we believe that our report speaks for itself," said spokeswoman Angela Aggeler.

It was not immediately clear how many U.S. couples were affected by the decision.

Linda Brownlee, executive director of a Washington-based international adoption agency, said the decision would mean that 20 families on its waiting list who will not be able to be matched with children in time.

"Now their dossiers will be returned to them," said Brownlee of The Adoption Center, one of more than 40 U.S. agencies that arrange adoptions of Vietnamese children.

She said the embassy report did not cover positive aspects of adoptions in the country.

"They didn't say how many visas they had approved with no problem," she said. "I know many agencies who have done great work there and that doesn't get reported."

Keith Wallace, CEO of Families Thru International Adoption, agreed. "The (abuse) cases reported by the embassy ... are such a very small fraction" of U.S. adoptions in Vietnam, he said. "It is wrong to imply that Vietnamese adoptions are corrupt through and through."

Vietnam suspended all adoptions with foreign countries in 2003 over concerns about corruption. U.S. adoptions resumed in 2005 under a bilateral agreement intended to ensure they were above board. It was due for renewal on Sept. 1.

Vietnam is only the latest country where U.S. adoptions have been halted or severely restricted.

Suspected fraud and other irregularities have cast a cloud over the nearly 3,000 pending U.S. adoptions from Guatemala, the second-largest source of U.S. adopted children after China. Under State Department pressure, Guatemala is allowing those to go through, but would-be parents were warned last year not to initiate new adoptions.

By contrast, adoptions from Ethiopia are on the increase, growing 71% to 1,255 last year. "Ethiopia has become a country where, because of the transparency of the system, many are adopting,"

said Wallace.

In the Ethiopian capital, Addis Ababa, American adoptive parents have become a common sight in the city's hotels.

On Monday, J.B. Sikes, of Anselmo, Neb., cradled his newly adopted son Binyam.

"It was my desire that my family represent what the Kingdom of God looks like, and that's all different colors," the 39-year-old corn farmer said.

Adopting in Ethiopia, which cost about $30,000, was less expensive and restrictive than in the United States, said Sikes, who has two other biological children.

"We started out wanting to adopt domestically, but we found we were the last one on everyone's list, because we have other children," he said.

*Copyright 2008 The Associated Press. All rights reserved. This material may not be published, broadcast, rewritten or redistributed.*

Advertisement



Mom Dilemma #36:
Your daughter insists on wearing her princess costume to the grocery store. Allow it or not?

YES, at least she's dressed!

NO, I have some rules!

momslike me

Print Powered By   FormatDynamics



look at vietnam

APPLY FOR VIETNAM VISA

☐ News Feed ☐
Comments

- Home
- News
  - Business
  - Community
  - Education
  - Health
  - International
  - Lifestyle
  - Politics
  - Sci-Tech
  - Social
  - Sports
  - Travel
- In depth
  - Features
  - Files
  - Interviews
  - Profiles
  - Reports
- Life in Vietnam
  - Best Buys-Services
  - Diaries
  - Fare Fest
  - Learn Vietnamese
  - Vietnam Identity
  - What's On
- About us
  - About vietnam
  - Vietnamese Culture

Search this website...   [ GO ]

- **Lastest updated:**
- SOCIETY IN BRIEF 19/10
- Huynh Ngoc Si condemned to life imprisonment
- SMEs disappeared to seek shelter in crisis
- Hong Kong movie star meets with Vietnamese audience
- Dao Anh Khanh "crazy" with Tree of Life
- Dong Van stone plateau
- Four million international visitors arrive Vietnam
- ART & ENTERTAINMENT IN BRIEF 19/10
- ENVIRONMENT IN BRIEF 19/10
- As changeable as gold prices

# Six officials jailed in Nam Dinh adoption scam

September 28, 2009  about <u>News</u>, <u>Social</u>

· Annonces Google·        Vietnam          Adoption          L Adoption        Sac Du Vietnam



**Six <u>health</u> and <u>charity</u> officials in northern Nam Dinh Province involved in an <u>adoption</u> scam were sentenced Monday to jail terms of two to four and a half years.**

They were among 16 officials tried for faking papers to have hundreds of babies adopted by foreigners for a <u>price</u>.

The six were found guilty of âabuse of power in public duty,â said Nguyen Tien Hung, vice-president of the Nam Dinh Peopleâs Court.

Vu Dinh Khan, former director of Truc Ninh District Social Welfare Center, was sentenced to four and a half years in jail while his counterpart Tran Thi Luong in Y Yen District got three and a half years.

Truong Cong Lich and Vu Dinh Loi, former heads of two commune medical <u>stations</u> in Y Yen District, got three years and two years respectively, while Vu Van Kiem, accountant and cashier of the Truc Ninh social center was sentenced to two years in prison.

Resident Tran Trong Lam was sentenced to three years in prison for procuring babies for the officers.

Ten others in the scandal received suspended sentences of between 15 and 18 months at the end of a trial which began last Tuesday.

The 16 health staff and charity workers were accused of receiving babies from mothers with unwanted pregnancies and assembling false <u>documents</u> to show they were abandoned. As many as 266 infants were thus adopted by foreigners between 2005 and 2008.

The judges said these actions had defamed the central government and adversely affected its humanitarian policy.

Nam Dinh Province prosecutors last Friday suggested jail terms of up to five and half years for Khan, Luong, Lich and Lam, and suspended sentences of the others.

A total of 18 officers were prosecuted in the case. Local police have put a warrant for two who have escaped since the case was busted July last year, three months after the US embassy in Hanoi reported on endemic baby-selling and graft in Vietnamâs adoption system.

Each officer involved in the case earned millions of dong from the adoptions.

Vu Dinh Ky, former head of a commune medical center, received 28 million dong (US$1,593) for faking the documents of 14 newborn children but told the court âit was just to help the babies.â

Vu Duc Long, head of the international adoptions department at Vietnam Justice Ministry, said at the time the case was busted that most children put up for overseas adoption from the two Nam Dinh centers went to France and Italy, and some to the US, *AFP* said Monday.

*Reported by Thai Son*

**Voyages-Hôtels au Vietnam**
Votre voyage individuel sur-mesure
Vietnam Cambodge - Devis gratuit !
www.vietnamvoyages.com

**Women's Vietnam**
The Fun & Easy Way To 100s of Women's
Vietnam At Low Prices
www.Gifts.com

**Huong Hai Junks® 95$**
Best Choice to Discover Halong Bay 15%
Off & More - Reservation Now
www.halongdiscovery.com

Annonces Google

Tags: Adoption, Adoption Scam, babies, Case Was Busted, center, Center Was Sentenced, Commune Medical, Dinh Province, District, District Got Three, Former, Got Three, Half Years, In The Case, Jail Terms, Nam Dinh, Nam Dinh Province, Officials, sentenced, Suspended Sentences, The case, The Case Was, The Case Was Busted, Three, Three years, To Four And, Truc Ninh, Two Years, Vu Dinh, years, Yen District, Yen District Got, Yen District Got Three

## Comments

**Feel free to leave a comment...**

You must be logged in to post a comment.

## eNews & Updates

Sign up to receive breaking news
as well as receive other site updates!

Enter your email address  [ GO ]



**Sponsor advertising**





- **Recent Posts**
  - SOCIETY IN BRIEF 19/10
  - Huynh Ngoc Si condemned to life imprisonment
  - SMEs disappeared to seek shelter in crisis
  - Hong Kong movie star meets with Vietnamese audience
  - Dao Anh Khanh "crazy" with Tree of Life

- **Exchange rate**

  USD = 19.500 Vnd
  GBP = 32.434 Vnd
  HKD = 2.633 Vnd
  CHF = 20.637 Vnd
  JPY = 252.58 Vnd
  AUD = 19.826 Vnd
  CAD = 19.970 Vnd
  SGD = 15.705 Vnd
  EUR = 28.207 Vnd
  NZD = 15.438 Vnd
  BatTháiLan = 780 Vnd

- **Categories**
  - News
    - Business
    - Community
    - Education
    - Health
    - International
    - Lifestyle
    - Politics
    - Sci-Tech
    - Social
    - Sports
    - Travel
  - In depth
    - Features
    - Files
    - Interviews

- ■ Profiles
- ■ Reports
- ○ Life in Vietnam
  - ■ Best Buys-Services
  - ■ Diaries
  - ■ Fare Fest
  - ■ Learn Vietnamese
  - ■ Vietnam Identity
  - ■ What's On

- **Sponsored**

  - ○ Game Y3.com
  - ○ Mini Games
  - ○ Tin tuc trong ngay
  - ○ Travel Forums
  - ○ Vietnam Visa Agent

· **Advertisement**



Copyright © 2008 Look At Vietnam · VietAll Rights Reserved · - Powered by Netlink