FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

11 SEP 26 AM 11: 16

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA. FLORIDA

| | |
|---|---|
| SUZANNE & ROBERT CRAIG, SEAN & LORI BOYNTON, SUMMER ELIZANDO, KEVIN & NICHOLE LUCAS,<br><br>Plaintiffs,<br><br>vs.<br><br>LITTLE PEARLS ADOPTION AGENCY, INC., a Florida for Profit Corporation, DEBBIE FISCHER and RICHARD FEINBERG, individuals, jointly and severally<br><br>Defendants. | Case No.: 8:10-cv-671-T30 TGW |

## FISCHER ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

I, Defendant Debbie Fischer ("Fischer," "I," or "me"), answer and defend against the First Amended Complaint as follows:

## ANSWER

I respond to the complaint first with Statement of the Case, Analysis, and individual numbered answers corresponding to the numbered paragraphs of the First Amended Complaint as follows:

## SUMMARY OF COUNTS AND GENERAL RESPONSE

I start by summarizing the counts:
1. Count One - Breach Of Contract Fraud In The Inducement
2. Count Two - Breach Of Contract
3. Count Three - Innocent Misrepresentation
4. Counts Four And Five – Dismissed By The Court
5. Count Six - Racketeer Influenced And Corrupt Organizations Act 18 U.S.C. §§ 1962(C) (Feinberg And Fischer)
6. Count Seven - Racketeer Influenced And Corrupt Organizations Act 18 U.S.C. § 1962(D) (Feinberg, Fischer And Little Pearls)- Dismissed By The Court
7. Count Eight – Negligence All Defendants- Dismissed By The Court
8. Count Nine – Contract Negligent Misrepresentation - All Defendants

I deny all allegations that Plaintiffs directed at me in the Statement of the Case and all subsequent claims of wrongdoing. Without limitation, I dispute that I acted wrongly or otherwise have responsibility for the Plaintiffs' unsuccessful adoptions as they alleged. I acknowledge that I made representations to and received sums of money from the Plaintiffs. I deny that I somehow stand responsible for behaviors of people part of or subject to a foreign Communist government, and of contractors that provided Little Pearls (hereinafter "LP") with services associated with the adoptions. Various paragraphs of the First Amended Complaint combine allegations against me with other defendants. I haven't sufficient knowledge, authority, and capability to respond to allegations directed to other defendants or third parties. The Court dismissed Counts Four, Five, Six, and Seven so I shall not respond to them.

## **STATEMENT OF THE CASE**

I state the following in summary of the circumstances and events related to this lawsuit. I had started an adoption agency A Angels Adoption, Inc. prior to taking employment with LP. I had met MaiLy LaTrace (hereinafter "MaiLy") who operated Child Placement Consultants (hereinafter "CPC") during a showing of my personal residence in St. Petersburg, Florida. I had planned to obtain babies from Guatemala and then Ecuador, and MaiLy consulted with me in the paperwork for getting a Florida license. She claimed she had facilitated over 600 adoptions. I had agreed to pay MaiLy for CPC service in the form of commissions on adoption fees. We never consummated any adoptions.

MaiLy introduced me to my fellow Defendant Ric Feinberg (hereinafter "Ric") a Tampa attorney with an adoption agency, Little Pearls Adoption Agency, a Florida S corporation in which Ric functioned as Chairman of the Board of Directors, President, and the sole shareholder. Ric had worked with both MaiLy and her mother, Marie La Trace to obtain a license inside Vietnam to adopt babies. Ric had tried to sell LP, but could not find a buyer willing to pay his asking price. He told me he would sell LP to me for $80,000 plus $22,000 to pay arrears expenses for LP's operation and staff in Vietnam. He pressured me not to go to Ecuador, but offered me no incentive not to, so I went

anyway. He had told me he needed my help urgently so the licensing window there didn't expire. He showed me Florida's Department of Children and Families report on MaiLy and Marie, which indicated they had no charges of wrong doing against them for prior adoption work. Ric urged me to use them if I bought LP, especially since both spoke Vietnamese. When Ric, Marie, MaiLy, and myself met to close my purchase, Ric had brought a contract for me to sign with terms radically different from our prior agreement. The contract, entitled Repayment Agreement, stipulated LP would take my $80,000 purchase amount and apply it to repaying part of a $181,000 debt to Ric, that LP would forgive the balance, and that $22,000 would go to Ric to pay the arrears office expenses and other fees in Vietnam. I signed it even though Ric did not give his shares of stock. I reasoned that in the end the LP business would produce sufficient revenue to compensate me abundantly. I just considered it an investment, even though I got nothing for it in the end. After the closing I learned that I had to forfeit my license in A Angels in order to work in LP. So I shut down A. Angels. After a few weeks, Vietnam's government did not agree to Mr. Lam and to Ric selling me the business. So Ric had to stay in the company to keep the license intact.

I set out to get customers. I collected $13,500 from each, which included $7,500 for operating expenses and a $6,000 holding fee for Vietnam. I paid the Vietnam staff part of the $7,500 through writing checks on the LP bank account I had set up, and handing it to MaiLy at the bank, whereupon she got cash for it from Michael Padgett, a Bank of America employee, and he pretended to wire the money to Marie in Vietnam while I waited. I did not ask for a receipt from MaiLy. I knew I would have the canceled checks I wrote to CPC, her consulting company. I visualized the bankwire arriving in Vietnam and Marie using the funds to pay expenses, bribes, and fees, the custom in Vietnam for adoptions.

Ric told me I would have to go to Vietnam to ensure the license remained valid because of the change of location of the office and new Vietnam representataive, Mr Thao, for LP's Vietnam operation. That change necessitated a change in the license documents which would impose a delay on obtaining babies. I had not known this necessity. I paid a $6000 government fee to CPC which seemed to me like a bribe because MaiLy told me I must, and then traveled to Vietnam with a bunch of gifts for the orphanages and government officials (more bribes). Marie met me there and escorted me around to the orphanages and government offices and glibly told me she had received the money I had sent. I paid many other government fees while in Vietnam. The government officials told me all would go well with the license adjustment, and I would receive the new license when I returned home. I returned in good cheer, confident that I had fixed all the problems with money and all would go smoothly.

Things didn't go smoothly. In December 2007, I learned that nobody had received payments, that Marie had not paid the office staff and rents, and the workers and government agents had become sullen and angry. The revised license with the changes came through on March 12, 2008. But our Vietnam staff kept demanding more money without any accounting for the monies sent to them.

I immediately contacted LP's clients and told them not to pay another penny to Marie or anyone else in Vietnam because the money would not get to the intended destination. In spite of this, I learned from the Plaintiff couples that every one of them sent additional money, approximately $6000 each, to Marie in Vietnam, in the form of cash.

On 6/15/08, I resigned from LP and offered six of the seven families promissory notes for $13,500 plus interest. The seventh family, Nichole and Kevin Robert Lucas, Plaintiffs' got their original $13,500 back from their credit card company on 2/28/08 long before I resigned. Summer Elizando and Sean and Lori Boynton got their $13,500 back within a few months. I grieved for the clients' disappointments and loss of money. So I offered a promissory note for $13,500 to the remaining Plaintiff, Suzanne and Robert Craig who then rejected it. I also offered promissory notes for $13,500 to two other clients who did not sue. They both accepted it. I finished paying both of them in September 2011.

Six weeks ago, I entered Wells Fargo bank and saw Mike working there. I asked him whether he had really wired that money to Vietnam for MaiLy. He told me that he had not. I did not press him for further details.

During my work with LP, I never received a contract of employment nor an offer of such a contract from anyone in LP. However, I did encourage and accept Ric's tutelage and coaching and did everything he told me to do as impeccably as I could. He told me I could trust MaiLy and Marie, and that he had sent them large amounts of monies to get the license approved for adoptions from Vietnam. I did as he instructed.

## ANALYSIS

I fulfilled my duties to LP and to the Plaintiffs loyally, and went beyond the call of duty to ensure that they got refunded to them their money which I had accepted from them. I fully complied with the spirit and purpose of their contracts with LP. I did my best to mitigate their loss when I discovered and reported to them that any further payment would harm them irreparably. I advised them not to pay anything to anyone in Vietnam. They breached their agreement with LP by making that payment anyway. Furthermore, they didn't try to mitigate their own loss. Their own error caused their further loss.

I showed extraordinary good faith in assisting clients in recovering their loss for which I had any involvement, even though I did not cause or have any fault in the loss of their money. I could not have prevented it and I did not personally owe them any further monies. Had the only Plaintiff who did not get a refund accepted the promissory note, I would have nearly paid off that Plaintiff also. Thus, the Plaintiffs seem to have filed the instant lawsuit to torture me, knowing LP has no money and no longer exists as a corporation, and knowing I have gone broke as a consequence of spending over $200,000 of my personal money to support the LP enterprise. I do not know what happened to the money I received from clients and paid to CPC, but clearly it did not reach the targets I intended for it. Whoever ended up with it cheated the clients, and in the process absolutely destroyed LP and its opportunity ever to help couples adopt babies from Vietnam.

1.      Denied.

2.      Denied.

3.      Admitted only that FISCHER is subject to personal jurisdiction in Hillsborough
County, Florida. Otherwise, denied.

4.      Fischer realleges and incorporates by reference his responses to the Statement of the
Case and paragraphs 1-3.

5.      Without knowledge, and therefore denied.

6.      Without knowledge, and therefore denied.

7.      Without knowledge, and therefore denied.

8.      Without knowledge, and tsherefore denied.

9.      Admitted only that Little Pearls Adoption Agency, Inc. ("Little Pearls") was
formally known as An Angelic Choice and that the business was organized in Florida and
specialized in international adoptions of children from Vietnam. Otherwise, denied.

10.     Admitted only that Little Pearls is a properly registered Florida corporation.
Otherwise, without knowledge and therefore denied.

11.     Without knowledge, and therefore denied.

12.     Admitted only that Fischer served as a director Little Pearls for a specific time
period and that she resides in Florida. Otherwise, denied.

13.     With respect to Fischer, denied.  Otherwise, without knowledge and therefore
denied.

14.     Fischer realleges and incorporates by reference his responses to the Statement of the
Case and paragraphs 1-13.

15.     Without knowledge, and therefore denied.

16.     Without knowledge, and therefore denied.

17.     Without knowledge, and therefore denied.

18.     Admitted only that the business of Little Pearls was providing adoptions. Otherwise, denied.

19.     Without knowledge, and therefore denied.

20.     Denied as to Fischer. Otherwise, without knowledge and therefore denied.

21.     Denied as to Fischer. Otherwise, without knowledge and therefore denied.

22.     Without knowledge, and therefore denied.

23.     Without knowledge, and therefore denied.

24.     Without knowledge, and therefore denied.

25.     Denied to the extent the allegations of this paragraph suggest that Fischer acted wrongfully or is otherwise liable to the Plaintiffs.

26.     Without knowledge, and therefore denied.

27.     Denied.

28.     Admit.

29.     Without knowledge, and therefore denied.

30.     Without knowledge, and therefore denied.

31.     Admit.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied to the extent the referenced contracts speak for themselves and are the best evidence of their terms and conditions.

36.     Admitted only that Fischer communicated by email.

37.   Denied.

38.   Denied.

39.   Denied. Per 6/15/08 letter, a promissory note was offered to six families and acknowledged that fact.

40.   Admit.

41.   Denied.

42.   Denied as to Fischer.

43.   Denied.

44.   Denied to the extent the allegation is meant to suggest that Fischer acted as an agent of Little Pearls regarding the claimed actions.

45.   Denied to the extent the allegation is meant to suggest that Fischer acted as an agent of Little Pearls regarding the claimed actions.

46.   Denied to the extent the allegation is meant to suggest that Fischer made misrepresentations or otherwise acted unlawfully.

47.   Denied as to Fischer.

48.   Denied to the extent the allegations of this paragraph suggest that Fischer was engaged in a conspiracy to defraud the Plaintiffs or otherwise acted unlawfully.

49.   Without knowledge, and therefore denied.

50.   Denied.

51.   Without knowledge, and therefore denied.

52.   Without knowledge, and therefore denied.

53.   Admit.

54.   Denied, Dr. Long told Fischer to change the Vietnamese representative to Mr. Thao, his friend and the license would remain in effect and would be reissued as soon as Fischer returned home.

55.    Denied.

56.    Denied.

57.    Denied.

58.    Denied.

59.    Denied.

60.    Without knowledge, and therefore denied.

61.    Without knowledge, and therefore denied.

62.    Admitted only that the license with the changes came thru 3/12/08.

63.    Without knowledge, and therefore denied.

64.    Admit.

65.    Denied.

66.    Denied as to Fischer.

67.    Denied.

68.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

69.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

70.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

71.    Admitted only that the license with the changes came thru 3/12/08.

72.    Admitted only that the license with the changes came thru 3/12/08.

73.    Admitted only that the license with the changes came thru 3/12/08.

74.    Without knowledge, and therefore denied.

75.    Without knowledge, and therefore denied.

76.   Denied as to Fischer.  Otherwise, without knowledge, and therefore denied.

77.   Without knowledge, and therefore denied.

78.   Admit.

79.   Admitted only that Fischer emailed Lucas.

80.   Without knowledge, and therefore denied.

81.   Without knowledge, and therefore denied.

82.   Admitted only that a $12,000 country fee was the total country fee.

83.   Denied.

84.   Admit.

85.   Admit.

86.   Without knowledge, and therefore denied.

87.   Denied.

88.   Admit.

89.   Denied.

90.   Without knowledge, and therefore denied.

91.   Without knowledge, and therefore denied.

92.   Denied.

93.   Denied, Lucas paid a total of $13,500 and got it refunded to them on 2/28/08.

94.   Admit..

95.   Denied.

96.   Without knowledge, and therefore denied.

97.   Without knowledge, and therefore denied.

98.   Without knowledge, and therefore denied.

99.   Admit.

100.  Admit.

101.   Without knowledge, and therefore denied.

102.   Admit.

103.   Without knowledge, and therefore denied.

104.   Denied.

105.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

106.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

107.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

108.   Denied to the extent the allegations suggest that Fischer acted unlawfully. Otherwise, without knowledge and therefore denied.

109.   Without knowledge, and therefore denied.

110.   Denied.

111.   Denied to the extent the paragraph suggests that Fischer is obligated to pay any sum of money to any Plaintiff.

112.   Without knowledge, and therefore denied.

113.   Without knowledge, and therefore denied.

114.   Without knowledge, and therefore denied.

115.   Without knowledge, and therefore denied.

116.   Without knowledge, and therefore denied.

117.   Without knowledge, and therefore denied.

118.   Without knowledge, and therefore denied.

119.   Without knowledge, and therefore denied.

120.   Without knowledge, and therefore denied.

121.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

122.   Without knowledge, and therefore denied.

123.    Admit.

124.    Admitted only that Fischer emailed Boynton.

125.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

126.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

127.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

128.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

129.    Denied.

130.    Admit.

131.    Without knowledge, and therefore denied.

132.    Without knowledge, and therefore denied.

133.    Without knowledge, and therefore denied.

134.    Denied.

135.    Denied.

136.    Denied.

137.    Without knowledge, and therefore denied.

138.    Denied, paid LP $13,500 only.

139.    Denied.

140.    Without knowledge, and therefore denied.

141.    Denied.

142.    Without knowledge, and therefore denied.

143.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

144.    Without knowledge, and therefore denied.

145.    Without knowledge, and therefore denied.

146.    Without knowledge, and therefore denied.

147.    Denied.

148.    Without knowledge, and therefore denied.

149.    Denied.

150.    Without knowledge, and therefore denied.

151.    Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

152.    Denied as to Fischer.  Otherwise, without knowledge and therefore denied. Boynton got refund from the credit card companies.

153.    Denied to the extent the allegations of this paragraph suggest that Fischer is in possession of the referenced information.  Otherwise, without knowledge and therefore denied.

154.    Without knowledge, and therefore denied.

155.    Without knowledge, and therefore denied.

156.    Without knowledge, and therefore denied.

157.    Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

158.    Denied to the extent that the referenced contract speaks for itself and is the best evidence of its terms and conditions.

159.    Denied.

160.    Denied.

161.    Admit.

162.    Denied.

163.    Denied, licensing needed changes.

164.    Admit.

165.   Admit.

166.   Denied.

167.   Denied.

168.   Admit.

169.   Denied.

170.   Denied.

171.   Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.

172.   Denied.

173.   Denied.

174.   Without knowledge, and therefore denied.

175.   Without knowledge, and therefore denied.

176.   Denied.

177.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

178.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

179.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.  Fischer gave a promissory note on 6/15/08 and Craig's did not accept it.

180.   Without knowledge, and therefore denied.

181.   Admit.

182.   Admitted only that Elizando emailed LP.

183.   Admit.

184.   Denied.

185.   Without knowledge, and therefore denied.

186.   Admit.

187.    Denied.

188.    Denied to the extent that the referenced contract speaks for itself and is the best evidence of its terms and conditions.

189.    Without knowledge, and therefore denied.

190.    Admit.

191.    Admit.

192.    Denied.

193.    Denied.

194.    Denied.

195.    Admit.

196.    Without knowledge, and therefore denied.

197.    Admit.

198.    Admit.

199.    Without knowledge, and therefore denied.

200.    Admit.

201.    Admit.

202.    Admit.

203.    Admit.

204.    Without knowledge, and therefore denied.

205.    Without knowledge, and therefore denied.

206.    Without knowledge, and therefore denied.

207.    Admit.

208.    Admit.

209.   Denied to the extent the allegations suggests that Fischer acted unlawfully. Without knowledge whether the referenced meeting occurred.  Otherwise, denied.

210.   Denied to the extent the referenced contract speaks for itself and is the best evidence of its terms and conditions.  Otherwise, without knowledge and therefore denied.

211.   Without knowledge, and therefore denied.

212.   Denied.

213.   Without knowledge, and therefore denied.

214.   Denied, Elizando received $13,500 refund from the credit card company that she paid LP.

215.   Without knowledge, and therefore denied.

216.   Without knowledge, and therefore denied.

217.   Denied.

218.   Without knowledge, and therefore denied.

219.   Without knowledge, and therefore denied

220.   Without knowledge, and therefore denied

221.   Without knowledge, and therefore denied.

222.   Without knowledge and therefore denied.

223.   Without knowledge and therefore denied.

224.   Without knowledge, and therefore denied.

225.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

226.   Denied.

227.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

228.   Denied to the extent the referenced contracts speak for themselves and are the best evidence of their terms and conditions.

229.   Denied.

230.   Denied.

231.   Denied.

232.   Denied.

233.   Fischer realleges and incorporates by reference her responses to the Statements of the Case and paragraphs 1-232.

234. Without knowledge, and therefore denied.

235. Denied.

236. Denied.

237. Denied.

238. Denied to the extent the terms of the referenced contracts speak for themselves and are the best evidence of their terms and conditions.

239. Denied.

240. Denied as to Fischer. Otherwise, without knowledge, and therefore denied.

241. Denied.

242. Denied.

243. Denied.

244. Denied to the extent the terms of the referenced contracts speak for themselves and are the best evidence of their terms and conditions.

245. Denied.

246. Without knowledge, and therefore denied.

247. Denied as to Fischer, otherwise without knowledge, and therefore denied.

248.   Fischer realleges and incorporates by reference his responses to the Statement of the Case and paragraphs 1-247.

249.   Without knowledge, and therefore denied.

250.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

251.   Denied to the extent the terms of the referenced contracts speak for themselves and are the best evidence of their terms and conditions.

252.   Denied to the extent the terms of the referenced contracts speak for themselves and are the best evidence of their terms and conditions.

253.   Admit.

254.   Denied to the extent the terms of the referenced contract speak for itself and is the best evidence of its terms and conditions.

255.   Denied.

256.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

257.   Denied to the extent the terms of the referenced contracts speak for themselves and are the best evidence of their terms and conditions.

258.   Admit.

259.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

260.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

261.   Denied as to Fischer.  Otherwise, without knowledge and therefore denied.

262.   Fischer realleges and incorporates by reference her responses to the Statement of the Case and paragraphs 1-261.

263.   Without knowledge, and therefore denied.

264.   Denied as to Fischer.

265.   Denied.

266.   Denied to the extent the terms of the referenced contracts speak for themselves and are the best evidence of their terms and conditions.

267.   Denied.

268.   Denied as to Fischer.

269.   Denied as to Fischer.

Count Four and Five were dismissed as to Fischer.

270.   Fischer realleges and incorporates by reference his responses to the Statement of the Case and paragraphs 1-269.

271.   Without knowledge, and therefore denied.

272.   Without knowledge, and therefore denied.

273.   Without knowledge, and therefore denied.

274.   Without knowledge, and therefore denied.

275.   Without knowledge, and therefore denied.

276.   Denied as to Fischer.

277.   Denied as to Fischer.

278.   Denied as to Fischer.

279.   Denied as to Fischer.

280.   Denied as to Fischer.

281.   Denied as to Fischer.

282.   Denied as to Fischer.

283.   Denied as to Fischer.

284.   Denied.

285.   Without knowledge, and therefore denied.

286.  Denied as to Fischer.

287.  Denied as to Fischer.

288.  Denied as to Fischer.

289.  Denied as to Fischer.

290.  Denied as to Fischer.

291.  Denied as to Fischer.

292.  Denied as to Fischer.

292.  Denied as to Fischer.

293.  Denied as to Fischer.

294-309  Counts Seven and Eight were dismissed as to Fischer.

310.  Fischer realleges and incorporates by reference his responses to the Statement of the Case and paragraphs 1-309.

311.  Without knowledge, and therefore denied.

312.  Denied as to Fischer.

313.  Denied.

314.  Denied.

315.  Denied as to Fischer.

316.  Denied as to Fischer.

317.  Denied.

318.  Denied.

319.  Denied.

## Affirmative Defenses

### First Affirmative Defense

The breach of contract claim is rendered a nullity by the contracts attached to the

First Amended Complaint and thus fails to state a viable claim against Fischer.

There are insufficient allegations to otherwise impose liability upon Fischer based solely on

her position as a director to Little Pearls. Further, the breach of contract claim contains

additional allegations contradicted by the attached contracts such as the claim that the contracts

at issue required a successful adoption from the Nam Dinh province of Vietnam.

### Second Affirmative Defense

To the extent it is determined that the Plaintiffs failed to comply with the material

requirements of the attached contracts, any alleged failure of performance by Fischer or any

other defendant is excused by such prior breacshes.

### Third Affirmative Defense

The breach of contract claim is barred by the express terms of the contracts whereby the

Plaintiffs specifically agreed that there was no guarantee they would successfully adopt a child.

### Fourth Affirmative Defense

The breach of contract claim is barred by the doctrine of impossibility and intervening

causes outside of Fischer's control to the extent that Vietnam outlawed adoptions through no

fault of Fischer or because individuals or entities other than Fischer failed to take the actions

necessary to complete the adoptions.

### Fifth Affirmative Defense

The breach of contract claim is barred to the extent the Plaintiffs seek damages in tort for an alleged breach of contract and to the extent the Plaintiffs incorporate allegations of tortious and intentional conduct when such counts have been dismissed as to Fischer.

### Sixth Affirmative Defense

The claims are barred by the doctrine of avoidable consequences, estoppel and waiver to the extent the Plaintiffs voluntarily assumed responsibility for the completion of the adoptions and voluntarily provided funds directly to alleged representatives of Little Pearls in Vietnam.

### Seventh Affirmative Defense

The Plaintiffs failed to mitigate their alleged damages to the extent they provided funds to entities or individuals other than Fischer when they were aware or should have been aware that the adoptions could not be completed.

### Eighth Affirmative Defense

The claim for attorneys' fees in Count Two is barred and should be stricken as there is neither a contractual nor a statutory basis for the recovery of attorneys' fees.

Respectfully submitted,

Debbie Fischer
8047 Stimie Avenue North
St. Petersburg, FL
    33710
Email:  dfische1@tampabay.rr.com
Tel: (727) 381-6000
Fax: (727) 341-1345

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of tshe foregoing has been furnished

on the 26th day of September, 2011, to the following:

Sean C. Boynton, Esquire
Bush Ross, P.A.
1801 North Highland Avenue
Tampa, FL  33602
(813) 204-6494
(813) 223-9620 – FAX
Attorneys for Plaintiff

Joni M. Fixel, Esquire
Fixel Law Offices
4084 Okemos Road,
Suite B
Okemos, MI 48864
(517)332-3390
Attorney for Plaintiffs

Jonathan B. Sbar
2309 S. MacDill
Avenue
Tampa, Fl 33629
(813)769-5600
Attorney for Richard
Feinberg


Debbie Fischer